1  Chip Cox (SBN 159681)
   chipc@gpsllp.com
2  GREENAN, PEFFER, SALLANDER & LALLY LLP
3  2000 Crow Canyon Place, Suite 380
   San Ramon, CA 94583
   Telephone:    (925) 866-1000
4  Facsimile:    (925) 830-8787

5  Attorneys for Defendant
   Guide To Insure, LLC
6

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                     SAN JOSE DIVISION

11

12  TERRI LEE NICHOLS, individually and on       Civil Action No. 5:23-cv-04920-PCP
    behalf of all those similarly situated,

13                                                **DEFENDANT GUIDETOINSURE, LLC'S**
                    Plaintiff,                    **NOTICE OF MOTION AND MOTION TO**
14                                                **DISMISS COMPLAINT FOR LACK OF**
            vs.                                   **PERSONAL JURISDICTION AND**
15                                                **FAILURE TO STATE CLAIM;**
    GUIDETOINSURE, LLC D/B/A                      **MEMORANDUM OF POINTS AND**
16  INSURALIFE,                                   **AUTHORITIES**

17                  Defendants.

18                                                Date:        February 1, 2024
                                                  Time:        10:00 a.m.
19                                                Courtroom:   8

20

21

22

23

24

25

26

27

28

1          <u>**NOTICE OF MOTION AND MOTION**</u>

2    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3          **PLEASE TAKE NOTICE** that on February 1, 2024 at 10:00 a.m. or as soon thereafter as

4    may be heard before the Honorable P. Casey Pitts, of the United States District Court, Northern

5    District of California, San Jose Division, located at 280 South First Street, San Jose, California in

6    Courtroom 8, defendant GuideToInsure, LLC dba InsuraLife ("GuideToInsure") will and hereby

7    does move to dismiss plaintiffs' complaint under Rule 12(b)(2) of the Federal Rules of Civil

8    Procedure on the grounds the Court lacks personal jurisdiction over GuideToInsure, and under

9    Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that plaintiff fails to allege

10   facts that state a claim for relief.

11         This Motion is based on the grounds that the Court lacks personal jurisdiction over

12   GuideToInsure.  GuideToInsure did not purposefully direct its activities to California.  This

13   Motion is also based on the grounds that plaintiff has not alleged sufficient facts to support its

14   claims under the Telephone Consumer Protection Act.  This Motion is based on this Notice of

15   Motion and Motion and attached Memorandum of Points and Authorities, and the Declaration of

16   Cody Williams, filed herewith, and any other matter that the Court may properly consider.

17   Dated: December 21, 2023              GREENAN, PEFFER, SALLANDER & LALLY, LLP

18

19

20                                    _____/S/_____
                                              Chip Cox
21                                       Attorneys for Defendant
                                          GuideToInsure, LLC
22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 6

II.     SUMMARY OF MOTION ........................................................................ 7

IV.     PLAINTIFF'S CLAIMS MUST BE DISMISSED AS THE COURT DOES
        NOT HAVE PERSONAL JURISDICTION OVER GUIDETOINSURE. ................. 10

        A.     Legal Standard .......................................................................... 10

        B.     The Court Can Exercise Neither General Nor Specific Jurisdiction
               Over GuideToInsure. ................................................................. 11

               1.     GuideToInsure is not subject to general jurisdiction in
                      California because it is not "at home" in California. .......................... 11

               2.     GuideToInsure is not subject to specific personal jurisdiction of
                      California because the alleged controversy does not arise out of
                      any conduct aimed at California. .......................................................... 13

                      a.     Element 1 – Purposeful Direction ................................... 14
                      b.     Element 2 – Arising out of Forum Related Activities ................ 17
                      c.     Element 3 – Fair Play and Substantial Justice .......................... 17
                      i.     Purposeful Injection ............................................................ 18
                      ii.    Burden on the parties .......................................................... 18
                      iii.   Sovereignty Concerns .......................................................... 18
                      iv.    Forum's Interest in Adjudication .................................... 18
                      v.     Efficient Judicial Resolution ............................................ 19
                      vi.    Alternative Forum .............................................................. 19
                      vii.   Conclusion .......................................................................... 19

V.      PLAINTIFF FAILS TO STATE A CLAIM AGAINST GUIDETOINSURE ......... 19

        A.     Legal Standard .......................................................................... 19

        B.     Plaintiff fails to state a claim for violations of the Do Not Call Registry ........ 19

               1.     Plaintiff fails to allege direct or vicarious liability against
                      GuideToInsure. .................................................................... 20

        C.     Plaintiff Fails to State a Claim for Pre-recorded Calls. .................................. 24

        D.     Plaintiff should not be permitted to amend the First Amended
               Complaint. ................................................................................. 24

VI.     CONCLUSION .......................................................................................... 25

1

## TABLE OF AUTHORITIES

2

<u>Cases</u>

3

*1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229  (10th Cir. 2013) ........................ 21

4

*Aaronson v. CHW Group, Inc.*, 2019 WL 8953349 (D.N.J. Jan. 11, 2023) ................... 24

5

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784 (9th Cir. 1977) ........................ 12

6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 11, 19

7

*Bancroft & Msters, Inc. v. Augusta Nat., Inc.*, 223 F.3d 1082 (9th Cir. 2000) .............................. 13

8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 19

9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ......................................... 16

10

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................................... 15

11

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011) ............................. 13, 18

12

*Core-Vent Corp. v. Nobel Indus., AB*, 11 F.3d 1482 (9th Cir.1993) ................................ 15

13

*Cunningham v. Rapid Capital Funding, LLC/RCF*, 2017 WL 3574451, (M.D.
    Tenn. July 27, 2017) ........................................................................ 23

14

15

*Curran v. Jerome Hotel*, 26 F.3d 130 (9th Cir. 1994) ........................................... 11

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280 (9th Cir. 1977) ................ 11

16

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) .................................. 18

17

*Duran v. Wells Fargo Bank*, N.A., 878 F. Supp. 2d 1312 (S.D. Fla. 2012) ................. 24

18

*Edsall Const. Co. v. Robinson*, 804 P.2d 1039 (Mont. 1991) ................................ 14

19

*Edward Brown & Sons v. City and County of San Francisco*, 36 Cal. 2d 272
    (1950) ....................................................................................... 16

20

*Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ...................... 21

21

22

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.,* 905 F.3d 597 (9th Cir.
    2018) ....................................................................................... 11

23

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ................... 12

24

*Hampton v. Barclays Bank Delaware*, 2019 WL 4256371 (D. Kan. Sept. 9, 2019) ................. 24

25

*Hicks v. Alarm.com*, 2020 WL 9261758 (E.D. Va. Aug. 6, 2020) ............................ 23

26

*Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474 (9th Cir. 1986) ............... 12, 16

27

*Hunt v. Erie Ins. Group*, 728 F.2d 1244 (9th Cir. 1984) ...................................... 14

28

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008)..........................................................11

*Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443 (9th Cir. 2018) ...............................................21

*Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376 (9th Cir. 1981)....................................................14

*Linlor v. Five9, Inc.*, 2017 WL 5885671 (S.D. Cal. Nov. 29, 2017) ............................................21

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011) ....................14, 15

*Morgan v. U.S. Xpress, Inc.*, 2018 WL 3580775 (W.D. Va. July 25, 2018) ................................23

*Myers v. Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001) .....................................................17

*Naiman v. Freedom Forever, LLC*, 2019 WL 1790471 (N.D. Cal. Apr. 24, 2019) .....................22

*Naiman v. TranzVia LLC*, 2017 WL 5992123 (N.D. Cal. Dec. 4, 2017) .......................................21

*Ott v. Mortgage Investors Corporation of Ohio, Inc.*, 65 F. Supp. 3d 1046 (D. Or. 2014) .............................................................................................................................................15

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998)................................................12

*Pascal v. Agentra, LLC*, 2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) ......................................20

*Rogers v. Assurance IQ, LLC*, 2023 WL 2646468 (W.D. Wa. March 27, 2023)..........................24

*Rogers v. Postmates Inc.*, 2020 WL 3869191 (N.D. Cal. July 9, 2020) .......................................20

*Saragusa v. Countrywide*, 2016 WL 1059004 (E.D. La. Mar. 17, 2016) .....................................24

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004)............................12, 14

*Scott v. Breeland*, 792 F.2d 925 (9th Cir. 1986) ........................................................................11

*Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421 (N.D. Cal. May 13, 2020) .............................20

*Smith v. Pro Custom Solar LLC*, 2021 WL 141336 (D.N.J. Jan. 15, 2021) ...............................24

*Smith v. Pro Custom*, 2021 WL 141336 (D.N.J. Jan. 15, 2021) .................................................24

*Smith v. Vision Solar LLC*, 2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) ..................................23

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ..............................................19

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007).................................................................11

*Taylor v. Portland Paramount Corp.*, 383 F.2d 634 (9th Cir. 1967)............................................11

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006).........................................14

*Warnick v. Dish Network LLC*, 301 F.R.D. 551 (D. Colo. 2014) ................................................22

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

GuideToInsure respectfully moves to dismiss the First Amended Complaint filed by Plaintiff, Terri Nichols ("Plaintiff"), it its entirety under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## I.    INTRODUCTION

Plaintiff is a professional plaintiff who makes a living by inducing companies to place telephone calls to her cellular phone, then suing those companies claiming violations of the Telephone Consumer Protection Act ("TCPA"). GuideToInsure is aware of at least six lawsuits brought by Plaintiff against a variety of defendants in a variety of jurisdictions, using cookie cutter complaints to assert class claims arising under the TCPA. In fact, Plaintiff already pursued claims for the exact calls that are the subject of this case. In the first lawsuit, Plaintiff sued a company called 360 Financial Group, and PolicyScout, LLC, GuideToInsure's parent company. On January 11, 2023, the Court dismissed PolicyScout for lack of personal jurisdiction, and Plaintiff appears to have settled, presumably for some financial gain, with 360 Financial. Now, in furtherance of her scheme, Nichols pursues this lawsuit against yet another innocent party, seeking to profit for calls for which she has already been paid, and which calls she invited in any event.

Based on GuideToInsure's investigations and records, it appears as if Plaintiff visits websites and voluntarily submits her personal information with the hope that someone will rely on her consent and place a phone call to her. She is adept at navigating the phone calls and obtaining information in order to identify companies to sue. As demonstrated by the facts in this case, if Plaintiff does not answer the call, she will place a return call, feign interest in the products, ask dozens of questions designed to lead the agent to a belief that Plaintiff is actually an interested consumer, and will ultimately use the information she obtains to file a lawsuit.

For reasons set forth in this Motion, plaintiff's plan cannot form the basis of a lawsuit against GuideToInsure much less a lawsuit in California where GuideToInsure does not direct any contact. Moreover, the allegations fail to state a claim against GuideToInsure, even if jurisdiction were proper. The court should dismiss the lawsuit in its entirety.

/ / /

## II.   SUMMARY OF MOTION

GuideToInsure moves to dismiss this matter for lack of personal jurisdiction. In order for personal jurisdiction to be valid, there must be either general jurisdiction or specific jurisdiction. The Federal District Court of California does not have either general or specific jurisdiction over GuideToInsure, as GuideToInsure is not "at home" in California nor does the alleged controversy arise out of any conduct intentionally aimed by GuideToInsure to California. Specifically, Plaintiff asserts a claim as a purported class representative against GuideToInsure for a voicemail or calls she allegedly received on April 1, May 2, 6 and 12, 2022. However, On Nov. 13, 2021, Plaintiff first initiated contact with GuideToInsure by visiting a website, submitting her phone number, and requesting contact. Thereafter, GuideToInsure placed one call to Plaintiff without any knowledge that Plaintiff purports to reside in California. Plaintiff's actions in initiating first contact and inviting further contact from GuideToInsure cannot form the basis for jurisdiction. Moreover, when submitting her information to GuideToInsure, Plaintiff supplied a Virginia phone number. Moreover, all information she submitted was encrypted, and GuideToInsure had no information regarding her residency at the time of the call. Therefore, it cannot be said that Plaintiff knowingly directed any contact into California when it had no reason to believe Plaintiff was in California. On this basis, Plaintiff's claims must fail for lack of jurisdiction.

Additionally, GuideToInsure moves to dismiss this matter for failure to state a claim. Plaintiff has failed to allege more than mere conclusory allegations tying Defendant to the phone calls in question or to the use of pre-recorded voice. The bare assertions and recitations of statutory language that form the Complaint are insufficient to state a claim. For this reason, the Complaint fails to state a claim for relief and is subject to dismissal.

## III.   GUIDETOINSURE DOES NOT HAVE SUFFICIENT MINIMUM CONTACTS WITH CALIFORNIA FOR THIS COURT TO EXERCISE JURISDICTION OVER GUIDETOINSURE.

1.   GuideToInsure is a Utah limited liability company with its principal place of business in Utah. (*See Declaration of Cody Williams*, ¶¶ 2, 4 (hereinafter "*Williams Decl.*")).

2.   GuideToInsure is an insurance agency. (*See id.* at ¶ 3).

3.      GuideToInsure does not direct its activities at California, and its interactions with Plaintiff were not targeted at California. (*See id.* at ¶ 12).

4.      GuideToInsure is not, and has never been, registered to do business in California. (*See id.* at ¶ 4).

5.      GuideToInsure does not have, and has never had, any offices, property, assets, or bank accounts in California. (*See id.* at ¶ 5).

6.      GuideToInsure does not have, and has never had, any managers or officers in California. (*See id.* at ¶ 6).

7.      GuideToInsure has never paid taxes in California. (*See id.* at ¶ 7).

8.      GuideToInsure has a general, informational website, but does not maintain marketing websites. Rather, third-party companies assist GuideToInsure in generating sales leads by providing insurance information and allowing consumers to request contact from insurance brokerages. (*See id.* at ¶ 8).

9.      GuideToInsure has never targeted or directed advertising or telemarketing at California, and has never engaged in any marketing campaign specifically directed at California or to residents of California. (*See id.* at ¶ 9).

10.     GuideToInsure has never hired any marketing affiliates in California or elsewhere, to promote GuideToInsure in California specifically. (*See id.* at ¶ 10).

11.     GuideToInsure does not engage in directed sales activity in California. (*See id.* at ¶ 11).

12.     GuideToInsure only communicates with consumers who first submit their information requesting contact from GuideToInsure. (*See id.* at ¶ 14).

13.     In every case, GuideToInsure is identified as a company who may contact the consumer upon the consumer's request. (*See id.* at ¶ 15).

14.     GuideToInsure does not initiate "cold" communication, but rather, only responds after consumers have initiated contact with GuideToInsure and completed an opt-in process. (*See id.* at ¶ 16).

15.     GuideToInsure does not have the ability to randomly generate numbers or automatically dial sequential numbers. It relies exclusively on consumers providing their own information. (*See id.* at ¶ 17).

16.     Unless a consumer submits a phone number to GuideToInsure, GuideToInsure will never become aware of, or possess, the phone number. (*See id.* at ¶ 18).

17.     On November 13, 2021, Plaintiff engaged the finddreamjobs.com and submitted her information. Only then was Plaintiff's phone number delivered to GuideToInsure. (*See id.* at ¶ 19).

18.     The information GuideToInsure received from the lead website was encrypted so as to protect the consumer's personally identifiable information. (*See Second Declaration of Cody Williams*, ¶¶ 7-8).

19.     No GuideToInsure employee was privy to any of Plaintiff's personal information, such as IP Address or physical address. (*See id.* at ¶¶ 9-10).

20.     The phone number Plaintiff submitted included 757 area code, which is in Virginia. (*See Williams Decl.* at ¶ 20).

21.     On May 12, 2022, GuideToInsure, relying on the consent Plaintiff provided, and in response to Plaintiff's initial contact, responded to Plaintiff's request by placing a single manually dialed phone call to Plaintiff. (*See id.* at ¶ 21).

22.     Plaintiff did not answer her phone, so GuideToInsure left a voicemail. (*See id.* at ¶ 22).

23.     At no point did Plaintiff opt-out from communications from GuideToInsure. (*See id.* at ¶ 23).

24.     In 2022, Plaintiff filed *Nichols v. 360 Financial Group* et al, Case No. 3:22-cv-03899-RS, for the same alleged calls at issue in this case against 360 Financial Group. Parties to that lawsuit were Plaintiff, and 360 Financial Group and PolicyScout, LLC, as Defendants.

25.     In her First Amended Complaint in that lawsuit, plaintiff alleged PolicyScout called plaintiff for 360 Insurance. (*See* Request for Judicial Notice, Exh. A, First Amended Complaint, ¶¶ 15-21.)

26.     The evidence showed the telephone number PolicyScout allegedly called to respond to plaintiff's inquiry had a 757 area code, which is in Virginia. (*See*, Request for Judicial Notice, Exh B, PolicyScout's Motion to Dismiss at 12:14-15; Exh. C, Declaration of Jeff Richard in Support of PolicyScout LLC's Motion to Dismisss Amended Complaint and Cross-complaint at ¶ 13; Exh. D, Second Declaration of Cody Williams at ¶ 38.)

27.     On January 11, 2023, the court dismissed PolicyScout for lack of personal jurisdiction. The court held PolicyScout's alleged telephone call to plaintiff using a telephone number with a Virginia area code, 757, did not establish specific personal jurisdiction over PolicyScout (*See* Request for Judicial Notice, Exh E, Order Granting Motion to Dismiss at 9:6-10:11.)

28.     Thereafter, Plaintiff appears to have settled with 360 Financial Group. (*See* Request for Judicial Notice, Exh. F, Notice of Dismissal.)

29.     Now, in this lawsuit, Plaintiff accuses GuideToInsure of placing the same phone calls, and asserts specific jurisdiction over GuideToInsure on the same basis that jurisdiction over PolicyScout was denied. (*See* Compl., ¶¶ 22-28)

## IV.     PLAINTIFF'S CLAIMS MUST BE DISMISSED AS THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER GUIDETOINSURE.

### A.     Legal Standard

When considering personal jurisdiction, the court presumes well-pleaded facts in the complaint are true with two important limitations.[1] First, the presumption does not extend to conclusory allegations, implausible claims, speculation, or conjecture. *See id.*; *see also Swartz v.*

---

[1] *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.,* 905 F.3d 597, 602 (9th Cir. 2018) ("Uncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in the plaintiff's favor."). If, however, the defendant adduces evidence controverting the allegations, the plaintiff must 'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction,' *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986), for a court 'may not assume the truth of allegations in a pleading which are contradicted by affidavit.' *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). Moreover, conclusory allegations or 'formulaic recitation of the elements' of a claim are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). 'Nor is the court required to accept as true allegations that are ... unwarranted deductions of fact, or unreasonable inferences.' *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

1   *KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). Second, a defendant may overcome the

2   presumption with an affidavit contradicting the complaint's jurisdictional allegations. *Taylor v.*

3   *Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967)("We do not think that the mere

4   allegations of the complaint, when contradicted by affidavits, are enough to confer personal

5   jurisdiction of a nonresident defendant.")

6        When the defendant does supply a declaration, the Court must presume the conclusions

7   stated in the declaration are true rather than the complaint's allegations. *Curran v. Jerome Hotel*,

8   26 F.3d 130, *2 (9th Cir. 1994)("Curran's conclusory allegations in her pleading were not

9   sufficient to contradict Hotel's affidavit."); *see also Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,

10  551 F.2d 784, 787–88 (9th Cir. 1977)(plaintiff must support exercise of jurisdiction with facts

11  when allegations are challenged by declaration).

12  **B.      The Court Can Exercise Neither General Nor Specific**
            **Jurisdiction Over GuideToInsure.**

13

14        Plaintiff's case arises under the Telephone Consumer Protection Act, which does not

15  govern personal jurisdiction. "When no federal statute governs personal jurisdiction, the district

16  court applies the law of the forum state." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320

17  (9th Cir. 1998). California's long arm statute "is coextensive with federal due process

18  requirements . . . ." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir.

19  2004). Therefore, "the jurisdictional analyses under state law and federal due process are the

20  same." *Id.* at 801 (citing *Panavision*, 141 F.3d at 1320).

21        Here, the Court lacks jurisdiction over GuideToInsure under both general and specific

22  jurisdiction theories because the exercise of jurisdiction under either theory would offend due

23  process.

24  **1.      GuideToInsure is not subject to general jurisdiction in**
            **California because it is not "at home" in California.**

25

26        General jurisdiction is appropriate only if the defendant's contacts with the forum are so

27  "continuous and systematic" that it is "at home in the forum State." *Goodyear Dunlop Tires*

28  *Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); Factors to be taken into consideration are

1  "whether the defendant makes sales, solicits or engages in business in the state, serves the state's

2  markets, designates an agent for service of process, holds a license, or is incorporated there."

3  *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986).

4  GuideToInsure does not have any sufficient contacts in California to be "at home" there.

5  GuideToInsure is not registered to do business in California, and has no offices, property,

6  assets, or bank accounts in California. *(See Williams Decl.*, at ¶¶ 4-5). GuideToInsure does not

7  pay taxes in California. (*Id.* at ¶ 7). GuideToInsure has no officers or managers in California. (*See*

8  *id.* at ¶ 6).

9  Further, GuideToInsure does not engage in directed sales activity in California. (*Id.* at ¶

10  11). Rather, if it is contacted by a California consumer, it may sell insurance to the consumer or

11  refer the consumer to a third-party. (*See id.* at ¶ 13). Even if GuideToInsure had, "engaging in

12  commerce with residents of the forum state is not in and of itself the kind of activity that

13  approximates physical presence within the state's borders." *Bancroft & Msters, Inc. v. Augusta*

14  *Nat., Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)(*citing Helicopteros Nacionales de Colombia, S.A.*

15  *v. Hall*, 466 U.S. 408, 418 (1984)).

16  In *CollegeSource, Inc. v. AcademyOne, Inc.*, a plaintiff argued that the court had general

17  jurisdiction over the defendant. 653 F.3d 1066 (9th Cir. 2011). In that case, it was demonstrated

18  that defendant "misappropriated CollegeSource's catalogs and course descriptions in California;

19  markets its services to California students and educational institutions; has three hundred

20  registered uses and two paid subscribers in California; and maintains a 'highly interactive'

21  website." *Id.* at 1074. On these facts, the plaintiff claimed that there were continuous and

22  systematic general business contacts.

23  The court ultimately determined that "AcademyOne's California activities do not

24  'approximate physical presence' in California, so AcademyOne is not subject to general

25  jurisdiction in California." *Id.* at 1076. The court came to this conclusion because the

26  misappropriation was based on a few discrete acts rather than a continuous and systematic

27  activity, AcademyOne had no offices or staff in California, they were not registered to do

28  business there, nor did they pay state taxes. *Id.* at 1074-75. The court also stated, "if the

1   maintenance of an interactive website were sufficient to support general jurisdiction in every

2   forum in which users interacted with the website, 'the eventual demise of all restrictions on the

3   personal jurisdiction of state courts' would be the inevitable result. *Id.* at ¶ 1075-76 (*quoting*

4   *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294, 100 S.Ct. 559, 62 L.Ed.2d 490

5   (1980)).

6          Here, given GuideToInsure's lack of physical presence in California, and its lack of

7   continuous and systematic contact of any kind with California or any residents thereof,

8   GuideToInsure's ocassional sales of insurance policies to California residents is insufficient to

9   find GuideToInsure "at home" in California. General jurisdiction does not exist. *See Bancroft*,

10   223 F.3d at 1086.

11                      **2.   GuideToInsure is not subject to specific personal jurisdiction
                              of California because the alleged controversy does not arise out
12                            of any conduct aimed at California.**

13

14          For specific jurisdiction to exist, the controversy in question must "relate[] to or arise[]

15   out of a defendant's contacts with the forum." *Schwarzenegger v. Fred Martin Motor Co.*, 374

16   F.3d 797, 801-02 (9th Cir. 2004)(*quoting Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987)). At

17   the outset, GuideToInsure's total alleged contact with Plaintiff is a single voicemail left with

18   Plaintiff after Plaintiff requested to be called and a few unanswered phone calls. But, "[I]nterstate

19   communication is an almost inevitable accompaniment to doing business in the modern world,

20   and cannot by itself be considered a 'contact' for justifying the exercise of personal jurisdiction."

21   *Edsall Const. Co. v. Robinson*, 804 P.2d 1039, 1042 (Mont. 1991). Therefore, the Court cannot

22   exercise personal jurisdiction over GuideToInsure based on a single phone call—or even a series

23   of phone calls as alleged by Plaintiff (though such is false).

24          Moreover, for a court to exercise person jurisdiction over a nonresident defendant

25   consistent with due process, the "defendant must have 'certain minimum contacts' with the

26   relevant forum." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir.

27   2011)(*citing Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945)); *see also Tuazon v. R.J.*

28   *Reynolds Tobacco Co.*, 433 F.3d 1163, 1168-69 (9th Cir. 2006); *Kransco Mfg., Inc. v. Markwitz*,

1  656 F.2d 1376, 1378 (9th Cir. 1981); *Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1246 (9th Cir.

2  1984).

3       The Ninth Circuit uses a three-part test to analyze whether a party's minimum contacts

4  meet the due process standard for the exercise of specific personal jurisdiction:

5       (1) The non-resident defendant must purposefully direct his activities or consummate
   some transaction with the forum or resident thereof; or perform some act by which he
6  purposefully avails himself of the privilege of conducting activities in the forum, thereby
   invoking the benefits and protections of its laws;
7

8       (2) the claim must be one which arises out of or relates to the defendant's forum-related
   activities; and

9       (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it
   must be reasonable.
10

11       *Core-Vent Corp. v. Nobel Indus., AB*, 11 F.3d 1482, 1485 (9th Cir.1993)(*quoting Lake v.*

12  *Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). This Court should decline to exercise jurisdiction

13  over GuideToInsure based on its alleged telephone calls to plaintiff for the same reasons the court

14  declined to exercise jurisdiction over PolicyScout based on the same alleged telephone calls in the

15  prior lawsuit.

16          *a.*     **Element 1 – Purposeful Direction**

17       Courts analyze purposeful direction using the three-part Calder "effects test." *Mavrix*

18  *Photo Inc,* 647 F.3d at 1228; *see also Calder v. Jones*, 465 U.S. 783, 787 (1984). To meet the

19  "effects test," the defendant must have "(1) committed an intentional act, [which was] (2)

20  expressly aimed at the forum state, [and] (3) caus[ed] harm that the defendant knows is likely to

21  be suffered in the forum state." *Id.* However, Calder does not "stand for the broad proposition that

22  a foreign act with foreseeable effects in the forum state always gives rise to specific

23  jurisdiction . . . there must be something more . . . ." *Bancroft*, 223 F.3d at 1087 (internal citations

24  omitted) (*citing Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998)). The

25  "something more" is "wrongful conduct targeted at a plaintiff whom the defendant knows to be a

26  resident of the forum state." *Bancroft*, 223 F.3d at 1087. Here, GuideToInsure has never targeted

27  any intentional wrongful act at Plaintiff. In fact, it did not initiate contact with Plaintiff, but rather,

28

1   responded to contact initiated by Plaintiff. Further, GuideToInsure could not have known that

2   Plaintiff was a resident of California because Plaintiff supplied a Virginia phone number.

3        In *Ott v. Mortgage Investors Corporation of Ohio, Inc.*, the Oregon Federal court applied

4   the "effects test" to a claim involving allegedly unlawful text messaging under the TCPA. *See* 65

5   F. Supp. 3d 1046 (D. Oregon 2014). There, the defendant sent text messages "[f]rom its offices"

6   where it had "hundreds of telemarketers" making "outbound telephone calls." *Id*. At 1054. The

7   defendant sent messages to plaintiff's Oregon phone numbers. *See id*. At 1057. The court

8   reasoned that because of the existence of the Oregon area codes in the phone numbers,

9   "defendants knew or should have known that the telemarketing scheme was aimed at persons in

10  Oregon." *Id*. This case is materially distinguishable from *Ott* for a number of reasons, and

11  Plaintiff cannot satisfy its burden to show "something more" required by *Bancroft*.

12       First, GuideToInsure does not engage in cold-call communications. It only responds to

13  contact initiated by consumers. (*See Williams Decl*. at ¶ 15). In other words, all communication

14  made by GuideToInsure was done in response to a valid consent and request for contact by

15  Plaintiff. (*See id*. At ¶ 15-17, 20). There is no intentional wrongful conduct directed at anybody,

16  including Plaintiff.

17       Second, the alleged conduct was not expressly aimed at the forum State. Plaintiff's phone

18  number has a 757 area code, which is in Virginia, not California. (*See id*. At ¶ 19). Even if

19  GuideToInsure had called the number multiple times, it would have had no reason to believe

20  Plaintiff was in California and therefore, could not have expressly aimed any conduct there.

21  Additionally, while Plaintiff alleges that GuideToInsure received her consent and personal

22  information and therefore knew that she was a resident of California, Plaintiff does not

23  understand how GuideToInsure's computer systems work and has no actual knowledge

24  supporting this allegation. Indeed, when GuideToInsure receives consumer information through

25  lead forms of the type used by Plaintiff, the information is encrypted. (*Second Williams Decl*. at ¶

26  7). Once the consumer provides an IP address, address, or other identifying information, the

27  information is stored in a database in an encrypted format. (*Id*. at ¶ 8). In this way,

28  GuideToInsure protects consumer's personally identifiable information. (*Id*.). No GuideToInsure

1   employee is privy to the information. (*Id*. at ¶ 9). Unless a GuideToInsure employee accesses the

2   decrypted database, the employee would never see an IP address or a physical address. (*Id*. at ¶

3   10). At no point prior to placing any call to Plaintiff did GuideToInsure have any reason to access

4   decrypted information, and so it did not access decrypted information. (*See id*. at ¶¶ 11-13). At

5   no point in time prior to the call GuideToInsure placed to Plaintiff, which was only done upon her

6   request, did any GuideToInsure employee have any indication that Plaintiff purports to reside in

7   California. (*Id*. at ¶ 13).

8          Further, it is well settled that a plaintiff's unilateral activity cannot give rise to personal

9   jurisdiction over a defendant; rather, the analysis "turns upon whether the defendant's contact are

10   attributable to actions by the defendant himself." *Hirsch v. Blue Cross, Blue Shield of Kansas*

11   *City*, 800 F.2d 1474, 1478 (9th Cir. 1986)(internal quotations marks and citations omitted); *see*

12   *also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)(holding that a defendant

13   cannot be hauled into a jurisdiction based solely on "the unilateral activity of another party or a

14   third person"). Here, Plaintiff, not GuideToInsure, initiated the primary communication. (*See*

15   *Richard Decl*. at ¶¶ 8-13). Such cannot form the basis for jurisdiction over GuideToInsure.

16          Third, for years, courts have recognized the fundamental principle that where a plaintiff

17   consents to the conduct complained of, they cannot state a claim for harm stemming from that

18   conduct. *Edward Brown & Sons v. City and County of San Francisco*, 36 Cal. 2d 272, 279 (1950)

19   ("It is a familiar maxim of jurisprudence that 'He who consents to an act is not wronged by it.'");

20   1 Am. Jur. 2d Actions § 41 ("It is a general principle, expressed in the maxim 'volenti non fit

21   injuria,' that no one may maintain an action to recover for an injury occasioned by an act to ©h he

22   or she has consented."). Here, Plaintiff voluntarily initiated first contact via the opt-in process,

23   and never opted-out from receiving future communication. (*See Williams Decl*. at ¶¶ 18-20).

24   Therefore, even if GuideToInsure had contacted Plaintiff multiple times, which it did not,

25   Plaintiff would still have no basis to allege that she has suffered harm as the result of any

26   communication by GuideToInsure.

27          Because GuideToInsure has not engaged in any intentional, wrongful act aimed at

28   California or its residents, did not even know Plaintiff resides in California, and has not caused

1    any harm in California, let alone to Plaintiff, the purposeful direction element of specific

2    jurisdiction fails.

3                    **b.      *Element 2 – Arising out of Forum Related Activities***

4              The Ninth Circuit follows the "but for" test to determine whether a plaintiff's claim arises

5    out of the defendant's conduct directed towards the forum. *See Myers v. Bennett Law Offices*, 238

6    F.3d 1068, 1075 (9th Cir. 2001). Under the "but for" test, plaintiff must show that they would not

7    have suffered an injury 'but for' the defendants' forum-related conduct. *Id.*

8              As argued above, GuideToInsure has not engaged in any conduct directed toward the

9    forum. It cannot be said that "but for" GuideToInsure's forum conduct, Plaintiff would not have

10   suffered injury. In fact, it was Plaintiff's own conduct in searching for websites online, submitting

11   personal information, and requesting contact, that triggered the communication. Further, the

12   subject communication cannot have resulted in harm, as it was invited. On this basis, personal

13   jurisdiction fails.

14                    **c.      *Element 3 – Fair Play and Substantial Justice***

15             "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts

16   to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be

17   reasonable." *Id.* At 1055 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

18   Here, Plaintiff has failed the first two prongs. Therefore, GuideToInsure does not carry the burden

19   for the third element.

20             *Arguendo*, reasonableness depends on seven factors: (1) the extent of the defendant's

21   purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in

22   the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the

23   forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the

24   controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective

25   relief; and (7) the existence of an alternative forum. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104,

26   1114 (9th Cir. 2002).

27   / / /

28   / / /

### i.        *Purposeful Injection*

GuideToInsure has not purposefully injected its affairs into the forum state or with Plaintiff. (*See Williams Decl.* at ¶¶ 4-13). Therefore, this factor favors GuideToInsure.

### ii.       *Burden on the parties*

GuideToInsure is a Utah limited liability company with its principal place of business in Utah. (*See id.* At ¶¶ 2-4). Its operations are in Utah, as is all evidence supporting its defenses to the claims at issue. GuideToInsure has not availed itself of doing business in California. (*See id.* At ¶¶ 4-13).

In candor to the Court, given "advances in transportation and telecommunications and the increasing interstate practice of law, any burden of litigation in a forum other than one's residence is substantially less than in days past." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011)(cleaned up) (*quoting Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007)). Accordingly, the potential burden on either party to this case is potentially equal. However, in the Ninth Circuit, "Plaintiff's convenience is not of paramount importance." *Dole*, 303 F.3d at 1116. Therefore, these factors tip slightly in GuideToInsure's favor.

### iii.      *Sovereignty Concerns*

The concern over sovereignty is whether California's exercise of jurisdiction over a Utah resident would conflict with Utah state law. Since the TCPA is a federal law, no conflict exists.

### iv.       *Forum's Interest in Adjudication*

In candor to the Court, the "Ninth Circuit assumes that a forum state maintains a strong interest in providing an effective means of redress for its residents tortiously injured." *Ott*, 65 F. Supp. 3d at 1058–59 (cleaned up) (citing *Panavision*, 141 F.3d at 1323). However, Plaintiff was not injured by any action of GuideToInsure. Accordingly, while this factor would typically favor jurisdiction in California, as Plaintiff suffered no injury by any action of GuideToInsure, this prong favors dismissal.

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### v.    *Efficient Judicial Resolution*

This factor focuses on the location of the evidence and witnesses. As stated, all of GuideToInsure's potential witnesses and evidence relevant to the claims are in Utah.

### vi.    *Alternative Forum*

Utah is a more appropriate alternative forum. It is the residence of GuideToInsure, and the location of all of GuideToInsure's witnesses and evidence.

### vii.    *Conclusion*

The seven factors tip in GuideToInsure's favor, and jurisdiction over GuideToInsure in California is improper.

## V.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST GUIDETOINSURE

### A.    Legal Standard

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently state a claim for relief. A legal claim brought in federal court mandates the pleading of sufficient facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). "[B]are assertion" and "conclusory allegation" will not suffice. *Id.* Naked allegations without such factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Further, legal conclusions, assertions, and opinions couched as facts are not presumed to be true. *See Twombly* at 555. "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B.    Plaintiff fails to state a claim for violations of the Do Not Call Registry

Plaintiff seeks relief under the National Do Not Call Registry provisions in Section 22(c) of the TCPA and its related implementing regulations, which together and in pertinent part prohibit "initiat[ing]" more than one "telephone solicitation" phone call or text message "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

1        Plaintiff fails to plead sufficient facts supporting the essential elements of such a claim,

2  and she relies instead on conclusions and contradictory allegations, which cannot avoid dismissal

3  here because Plaintiff has failed to alleged direct or vicarious liability and has failed to plead

4  other essential elements of a claim.

5        **1.**     **Plaintiff fails to allege direct or vicarious liability against**
                         **GuideToInsure.**

6

7        TCPA defendants may be held either directly or vicarious liable. *See, e.g., Rogers v.*

8  *Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020)("There are two potential

9  theories of liability under the TCPA: (1) direct liability; and (2) vicarious liability."). In other

10  words, "[f]or a person to 'make' [or 'initiate'] a call under the TCPA, the person must either (1)

11  directly make the call, or (2) have an agency relationship with the person who made the call."

12  *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019)(quoting *Abante*

13  *Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018))

14  (emphasis added).

15        For direct liability, the FCC has concluded that "a person or entity 'initiates' [or makes] a

16  telephone call when it takes the steps necessary to physically place a telephone call, and generally

17  does not include persons or entities . . . that might merely have some role, however minor, in the

18  causal chain that results in the making of a telephone call." *In re Joint Petition filed by Dish*

19  *Network, LLC*, 28 F.C.C Rcd. At 6583 ¶ 26 (emphasis added). Consequently, mere indirect

20  involvement in a call will not suffice. Instead, all TCPA plaintiffs must plead actual facts

21  supporting a plausible inference that the defendant itself, and not some third party, took the steps

22  necessary to "physically" place a call or send a text to the plaintiff for itself. *See, e.g., Sheski v.*

23  *Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020).

24        Put another way, Plaintiff must allege that Defendant placed more than one call in a 12-

25  month period for itself, and not as part of a telephone communication process for a third party.

26  Here, the Complaint states that Defendant placed calls on April 26, May 2, 6 and 12, 2022.

27  (Compl. at ¶ 25). However, the Complaint lacks any factual enhancements to elevate this

28  allegation beyond conclusion or bare assertion. It does not allege that Defendant made the calls

1   for itself or for some other third-party (e.g., 360 Financial Group). The quoted voicemail does not

2   identify Defendant. (*See id.* At ¶ 26). Further, the *Complaint* appears to allege that the calls were

3   placed for some other third party (or possibly by a third-party). Plaintiff alleges, "To identify

4   whose services were being promoted on these pre-recorded calls, the Plaintiff called the number

5   back after receiving the last call. During that call, the Plaintiff spoke with Star Washington from

6   one of [GuideToInsure's] clients." (*Id.* at ¶¶ 27-28). By these allegations, Plaintiff alleges that

7   calls were not placed for Defendants, but rather, for an alleged "client" of Defendant.

8        Plaintiff's conclusion that the defendant "made" or "initiated" or "placed" a call or text is

9   insufficient to plead a direct TCPA liability claim, without more. *See, e.g., Frank v. Cannabis &*

10  *Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019)(no direct liability where

11  complaint did "not provide any allegations [showing defendant] took steps physically necessary

12  to [physically] place the call"). On this basis, Plaintiff has failed to state a claim against

13  Defendant for direct liability.

14        For vicarious liability, Plaintiff must first allege plausible facts demonstrating a common

15  law agency relationship between Defendant and any involved third party (e.g., the alleged "client"

16  of Defendant). *See, e.g., Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449-50 (9th Cir. 2018)

17  (citing, inter alia, Restatement (Third) of Agency ("Restatement") § 1.01). Specifically, "[a]gency

18  is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another

19  person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's

20  control, and the agent manifests assent or otherwise consents so to act." *Naiman v. TranzVia* LLC,

21  2017 WL 5992123, at *6 (N.D. Cal. Dec. 4, 2017)(*quoting Jones v. Royal Admin. Servs., Inc.*,

22  866 F.3d 1100, 1105 (9th Cir. 2017) (citing Restatement) (emphasis added). *Accord 1-800*

23  *Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1250 (10th Cir. 2013)(applying Restatement to

24  determine agency for vicarious liability purposes). But agency requires "more than mere passive

25  permission; it involves request, instruction, or command." *Linlor v. Five9, Inc.*, 2017 WL

26  5885671, at *3 (S.D. Cal. Nov. 29, 2017). And "[t]hough 'the precise details of the agency

27  relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to

28

1   support a reasonable inference that an agency relationship existed.'" *Meeks*, 2018 WL 1524067,

2   at *5 (*quoting Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014)).

3        In short, the mere alleged existence of some connections between the defendant and the

4   maker of the call, or conversely, Defendant and the company on whose behalf a call was made,

5   will not suffice to plausibly allege vicarious TCPA liability and cannot avoid dismissal under

6   Rule 12(b)(6). Plaintiff has failed to allege any facts that could plausibly support an agency

7   relationship between Defendant and the unnamed, alleged "client" of Defendant who Plaintiff

8   called in response to her alleged receipt of the phone calls in question.

9
             **2.**      **Plaintiff fails to plead facts supporting other essential elements**
10                 **of her Do Not Call claim.**

11        As noted above, a viable Section 227(c) claim requires pleading sufficient facts supporting

12   an inference, *inter alia*, that Plaintiff received more than one "telephone solicitation" physically

13   initiated "by or on behalf of the same entity" in a 12-month period to a phone number registered

14   on the National Do Not Call Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

15        Here, because Plaintiff does not properly plead direct or vicarious liability, the Do Not

16   Call claim naturally fails. *See, e.g., Naiman v. Freedom Forever, LLC*, 2019 WL 1790471, *4

17   (N.D. Cal. Apr. 24, 2019)(dismissing § 227(c) claim where plaintiff failed "to plead any facts

18   giving rise to a reasonable inference that [defendant] or an entity under its control, made the calls

19   at issue") (emphasis in original).

20        Further, perhaps the most glaring omission in the pleading is an allegation that Plaintiff's

21   number is on National Do Not Call. While Plaintiff provides historical references to National Do

22   Not Call (*see* Compl. at ¶¶ 4-5, 18, 38), and purports to represent a class of consumers whose

23   numbers are on Do Not Call (*see id.* At ¶¶ 48, 55-59), nowhere in the *Complaint* does Plaintiff

24   actually allege that her number was registered to Do Not Call, or that the registration pre-dated

25   the alleged calls, or that the alleged calls came more than 31 days after she placed her telephone

26   number on Do Not Call. *See* 47 CFR § 64.1200 (the law only requires companies to scrub against

27   Do Not Call every 31 days). The absence of this material fact compels the dismiss of the claim

28   arising under Do Not Call.

1    Additionally, Section 227(c) of the TCPA "relates solely to telemarketing and solicitation

2 calls." *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 558 fn. 3 (D. Colo. 2014). Thus, to survive

3 dismissal under Rule 12(b)(6), Plaintiff must also plead actual plausible facts, not bald

4 conclusions, suggesting her receipt of a "telephone solicitation"—which in turn is defined in the

5 TCPA's implementing regulations as "the initiation of a telephone call or message for the purpose

6 of encouraging the purchase or rental of, or investment in, property, goods, or services, which is

7 transmitted to any person" without their "prior express invitation or permission." 47 C.F.R. §§

8 64.1200(c)(2), (f)(15).

9    Here, save for one voicemail, the content of which is included in the *Complaint*, which

10 arguably alludes to a commercial purpose, there is not a single additional allegation in the

11 Complaint regarding other calls that could possibly support a claim that more than one telephonic

12 solicitation was made in a 12-month period. In fact, it appears Plaintiff did not answer the other

13 alleged calls, so she could have no knowledge regarding the purpose of the calls, or whether such

14 would constitute solicitations. On this basis, this Court should dismiss the claim with prejudice as

15 Plaintiff cannot amend the *Complaint* based on her own knowledge in a way that could survive

16 dismissal.

17    It is also well-established that, to successfully state a DNC claim and avoid dismissal,

18 Plaintiff must also plead specific non-conclusory facts suggesting that the phone number upon

19 which the alleged calls or texts were received is actually used for "residential" purposes. *See, e.g.,*

20 *Cunningham v. Rapid Capital Funding, LLC/RCF*, 2017 WL 3574451, at \*3 (M.D. Tenn. July 27,

21 2017), report and rec. adopted, 2017 WL 3776165 (Aug. 31, 2017) ("As Plaintiff has not alleged

22 facts showing his cell phones are used for residential purposes, he fails to state a claim under

23 [Section 227(c) of the TCPA]."); *see also Morgan v. U.S. Xpress, Inc.*, 2018 WL 3580775, at \*2

24 (W.D. Va. July 25, 2018)(dismissing TCPA claim with similar element, holding plaintiff's

25 characterizations her number is a "residential" line "are not factual allegations, but legal terms

26 drawn from the operative statute"). This is true even if the number is allegedly on the National

27 DNC Registry. *See, e.g., Smith v. Vision Solar LLC*, 2020 WL 5632653, at \*3 (E.D. Pa. Sept. 21,

28 2020)(dismissing where plaintiff did not allege the "cell phone line in question is his residential

1    phone, as required" to state such a claim under federal pleading standards); *see also Hicks v.*

2    *Alarm.com,* 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020)(dismissing on this basis, noting:

3    "Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call

4    registry—which appears to be undisputed—but his argument never returns to the facts of ***this*** case

5    or the use of his phone.") (emphasis in original). Here, while Plaintiff states that the number is

6    "residential" (Compl. at ¶ 22), such is an insufficient conclusory recitation of statutory language

7    that is insufficient to support a claim.

8        **C.**    **Plaintiff Fails to State a Claim for Pre-recorded Calls.**

9        It is well-established that conclusory allegations are insufficient to state a plausible

10   robocall or "prerecorded voice" claim and avoid dismissal. *See, e.g., Hampton v. Barclays Bank*

11   *Delaware*, 2019 WL 4256371, at *5-6 (D. Kan. Sept. 9, 2019); *Aaronson v. CHW Group, Inc.*,

12   2019 WL 8953349, *3 (D.N.J. Jan. 11, 2023)(dismissing prerecorded voice claim); *Smith v. Pro*

13   *Custom Solar LLC*, 2021 WL 141336, at *3 (D.N.J. Jan. 15, 2021)(same); *Rogers v. Assurance*

14   *IQ, LLC*, 2023 WL 2646468, at *4 (W.D. Wa. March 27, 2023)(same); *Saragusa v. Countrywide*,

15   2016 WL 1059004, at *4 (E.D. La. Mar. 17, 2016), aff'd 707 F.App'x 797 (5th Cir. 2017) (same);

16   *Duran v. Wells Fargo Bank*, N.A., 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012)(same). "[A]bsent

17   some minimal description of the voice or message [or the device used], [Plaintiff] has put forward

18   no more than a conclusion—not any factual allegations that allow [this Court] to infer a right to

19   relief." *Smith v. Pro Custom*, 2021 WL 141336, at *3 (D.N.J. Jan. 15, 2021).

20       Other than the conclusory statement "the call used the following pre-recorded message"

21   (Compl. at ¶ 26), Plaintiff fails to allege any facts that indicate use of a pre-recorded voice. For

22   example, Plaintiff fails to indicate any click or pause, that would suggest the beginning of a

23   recording, fails to allege a robotic or unnatural voice, or any other such indicia of a robocall.

24   Accordingly, Plaintiff's allegation "does not raise the probability above a speculative level that"

25   Defendant used pre-recorded voice and this Court should dismiss the claim.  *Aaronson* at *1.

26       **D.**    **Plaintiff should not be permitted to amend the First Amended Complaint.**

27       On December 11, 2023, after receiving GuideToInsure's *Motion to Dismiss*, which

28   explains in detail the numerous deficiencies in pleading (as argued again herein above), Plaintiff

amended her Complaint. However, the First Amended Complaint failed to include any allegations to resolve the deficiencies identified in GuideToInsure's original *Motion to Dismiss* and again herein. While leave to amend is typically granted when a court grants dismissal for failure to state a claim, "leave to amend should *not* be granted where, in all probability, the amendment would be futile." *Vaillette v. Fireman's fund Ins. Co.*, 18 Cal. App. 4th 680, 685 (Cal. Ct. App. 1993) (emphasis in original)

Here, if Plaintiff had the ability to remedy the deficiencies in her pleading through amendment, she certainly would have done so when she amended. She did not. This failure establishes "in all probability" that her interactions with GuideToInsure did not provide a basis for a claim (which explains the repeated deficiency of material facts) and amendment would be futile. Because Plaintiff has already amended once, and failed to correct the deficiencies, this Court should dismiss with prejudice.

## VI.    **CONCLUSION**

For these reasons, GuideToInsure respectfully requests the Court dismiss plaintiffs complaint under Rule 12(b)(2) for lack of personal jurisdiction over GuideToInsure and under Rule 12(b)(6) for failure to state a claim against GuideToInsure.

Dated December 21, 2023                 GREENAN, PEFFER, SALLANDER & LALLY, LLP


                                        _____/S/_____
                                              Chip Cox
                                        Attorneys for Defendant
                                        GuideToInsure, LLC