1   Chip Cox (SBN 159681)
    chipc@gpsllp.com
2   GREENAN, PEFFER, SALLANDER & LALLY LLP
3   2000 Crow Canyon Place, Suite 380
    San Ramon, CA 94583
    Telephone:    (925) 866-1000
4   Facsimile:    (925) 830-8787
5   Attorneys for Defendant
    Guide To Insure, LLC
6

7                    UNITED STATES DISTRICT COURT

8                 NORTHERN DISTRICT OF CALIFORNIA

9                        SAN JOSE DIVISION
10

11
    TERRI LEE NICHOLS, individually and on        Civil Action No. 5:23-cv-04920
12  behalf of all those similarly situated,
                                                  **REQUEST FOR JUDICIAL NOTICE IN**
13                  Plaintiff,                    **SUPPORT OF DEFENDANT**
                                                  **GUIDETOINSURE, LLC'S MOTION TO**
14          vs.                                   **DISMISS COMPLAINT**

15  GUIDETOINSURE, LLC D/B/A
16  INSURALIFE,                                   Date:        February 1, 2024
                                                  Time:        10:00 a.m.
17                  Defendants.                   Courtroom:   8

18

19

20

21

22

23

24

25

26

27

28

1    Defendant GuideToInsure, LLC dba InsuraLife ("GuideToInsure") requests the Court take

2 judicial notice under Rule 201 of the Federal Rules of Evidence of the Order Granting Motion to

3 Dismiss and the First Amended Complaint, Motion to Dismiss, and supporting Declarations filed

4 in *Nichols v. 360 Financial Group, LLC*, U.S.D.C. (N.D. Cal.) Case No. 3:22-cv-03899-RS, listed

5 below. *Whitaker v. LL South San Francisco, L.P.*, 2021 WL 2291848, *6 (N.D. Cal. June 4,

6 2021)(court may take judicial notice of court documents already in the public record and

7 documents filed in other courts).

8    Exhibit A:  First Amended Complaint for Injunction and Damages, filed July 1, 2022

9 in *Nichols v. 360 Financial Group, LLC*, U.S.D.C. (N.D. Cal.) Case No. 3:22-cv-03899-AMO.

10    Exhibit B:  Defendant and Cross-defendant PolicyScout, LLC's Notice of Motion and

11 Motion to Dismiss Amended Complaint and Cross-complaint for Lack of Personal Jurisdiction

12 and Standing; Memorandum of Points and Authorities, filed October 18, 2022 in *Nichols v. 360*

13 *Financial Group, LLC*, U.S.D.C. (N.D. Cal.) Case No. 3:22-cv-03899-AMO.

14    Exhibit C:  Declaration of Jeff Richard in Support of PolicyScout LLC's Motion to

15 Dismiss Amended Complaint and Cross-complaint, filed October 18, 2022 in *Nichols v. 360*

16 *Financial Group, LLC*, U.S.D.C. (N.D. Cal.) Case No. 3:22-cv-03899-AMO.

17    Exhibit D:  Second Declaration of Cody Williams in Support of PolicyScout LLC's

18 Motion to Dismiss Amended Complaint and Cross-complaint, filed November 7, 2022 in *Nichols*

19 *v. 360 Financial Group, LLC*, U.S.D.C. (N.D. Cal.) Case No. 3:22-cv-03899-AMO.

20    Exhibit E:  Order Granting Motion to Dismiss, filed January 11, 2023 in *Nichols v.*

21 *360 Financial Group, LLC*, U.S.D.C. (N.D. Cal.) Case No. 3:22-cv-03899-AMO.

22    Exhibit F:  Stipulation for Dismissal & Order, filed July 17, 2023 in *Nichols v. 360*

23 *Financial Group, LLC*, U.S.D.C. (N.D. Cal.) Case No. 3:22-cv-03899-AMO.

24 Dated December 21, 2023    GREENAN, PEFFER, SALLANDER & LALLY, LLP

25

26

27            /S/_____

28             Chip Cox
             Attorneys for Defendant
             GuideToInsure, LLC

# EXHIBIT A

Rachel E. Kaufman (CSB# 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI LEE NICHOLS, on behalf of herself and others similarly situated, | Case No. 3:22-cv-03899-RS |
| Plaintiff, v. | **FIRST AMENDED COMPLAINT FOR INJUNCTION AND DAMAGES** |
| 360 INSURANCE GROUP LLC, POLICYSCOUT, LLC | **Class Action** |
| Defendants. | **JURY TRIAL DEMAND** |

Plaintiff Terri Lee Nichols ("Ms. Nichols"), by her undersigned counsel, for this class

action complaint against Defendant 360 Insurance Group LLC ("360 Insurance") and

PolicyScout, LLC ("PolicyScout") and their present, former and future direct and indirect parent

companies, subsidiaries, affiliates, agents and related entities, allege as follows:

## I.   INTRODUCTION

1.     Nature of Action: As the Supreme Court has explained, "Americans passionately

disagree about many things. But they are largely united in their disdain for robocalls. The

Federal Government receives a staggering number of complaints about robocalls—3.7 million

complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.     This case involves a campaign by 360 Insurance to market its financial services through the use of pre-recorded telemarketing calls in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (hereinafter referred to as the "TCPA"). The calls at issue were physically transmitted by PolicyScout.

## II.     PARTIES

3.     Plaintiff Nichols is an individual, who resides, and was located in San Jose, CA at the time of the calls at issue.

4.     360 Insurance Group LLC is a Missouri limited liability company.

5.     PolicyScout, LLC is a Utah limited liability company.

## III.     JURISDICTION AND VENUE

6.     Jurisdiction: This Court has federal-question subject matter jurisdiction over Plaintiff' TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

7.     Personal Jurisdiction: This Court has personal jurisdiction over the Defendants because their conduct at issue was directed into and received in California.

8.     Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff' claims—namely, the receipt of the illegal telemarketing from PolicyScout directed by 360 Insurance—occurred in this District.

1      9.     Intradistrict Assignment: Assignment to this Division is proper pursuant to Civil

2  Local Rule 3-2(c) because a substantial part of the events or omissions that give rise to Plaintiff'

3  claims—namely, the direction of the illegal telemarketing—occurred in this Division.

4                                    **IV.   FACTS**

5  **A.    The Enactment of the TCPA and its Regulations**

6      10.    Robocalls Outlawed: Enacted in 1991, the TCPA makes it unlawful "to make any

7  call (other than a call made for emergency purposes or made with the prior express consent of

8  the called party) using an automatic telephone dialing system or an artificial or prerecorded voice

9  … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1).

10  Calls made by an ATDS or with a prerecorded or artificial voice are referred to as "robocalls" by

11  the Federal Communications Commission ("FCC") and herein. Encouraging people to hold

12  robocallers accountable on behalf on their fellow Americans, the TCPA provides a private cause

13  of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

14      11.    Rationale: In enacting the TCPA, Congress found: "Evidence compiled by the

15  Congress indicates that residential telephone subscribers consider automated or prerecorded

16  telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an

17  invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105

18  Stat. 2394 § 2(10). Congress continued: "Banning such automated or prerecorded telephone calls

19  to the home, except when the receiving party consents to receiving the call or when such calls are

20  necessary in an emergency situation affecting the health and safety of the consumer, is the only

21  effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.*

22  § 2(12).

23      12.    The TCPA's sponsor described unwanted robocalls as "the scourge of modern

24  civilization. They wake us up in the morning; they interrupt our dinner at night; they force the

25  sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137

26  Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).

27

28

13. Prior Express Written Consent: The FCC has made clear that "prior express written consent" is required before making telemarketing robocalls to wireless numbers. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote omitted) (internal quotation marks omitted).

**B. Defendants' Unsolicited, Automated Telemarketing to Plaintiff**

14. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

15. Plaintiff's residential telephone number is (XXX) 705-XXXX ("Nichols Phone Number").

16. That number is assigned to a cellular telephone service.

17. Plaintiff Nichols never consented to receive calls from either Defendant.

18. Despite this, PolicyScout called the Nichols Phone Number for 360 Insurance, including a call on May 12, 2022.

19. The call used the following pre-recorded message.

> Hi there, I am just following up on your additional Medicare coverage quotes ...Just wanted to set up a quick call to make sure you get the best rates as I am looking at your file and there a lot of different options we can go over and we can make it easy to understand.

1    20.    To identify whose services were being promoted on these pre-recorded calls, the

2    Plaintiff called the number back after receiving the last call.

3    21.    During that call, the Plaintiff spoke to Star Washington from 360 Insurance.

4    22.    Star Washington identified herself as promoting Medicare products from

5
     companies as part of her employment with 360 Insurance Group.
6

7    23.    She also provided her Medicare License number as part of her relationship with

8    360 Insurance Group, No. 2489872.

9
     **C.    The Nuisance Created by Defendant's Automated Telemarketing**
10

11    24.    The telemarketing alleged herein: (A) invaded Plaintiff' privacy and solitude; (B)

12    wasted Plaintiff's time; (C) annoyed Plaintiff; (D) tied up Plaintiff's phone line; and (E) harassed

13    Plaintiff.

14

15    **V.    360 INSURANCE GROUP'S LIABILITY FOR POLICYSCOUT'S CONDUCT**

16    25.    For more than twenty-five years, the FCC has explained that its "rules generally

17    establish that the party on whose behalf a solicitation is made bears ultimate responsibility for

18    any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90,

19
     Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).
20

21    26.    In its January 4, 2008 ruling, the FCC likewise held that a company on whose

22    behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically

23    recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call

24    sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

25
     27.    In fact, the Federal Communication Commission has instructed that sellers such
26

27    as 360 Insurance Group may not avoid liability by outsourcing telemarketing to third parties,

28    such as PolicyScout:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

28. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

29. 360 Insurance Group is liable for PolicyScout's conduct because it controls the manner and means of its telemarketing methods by:

    a)    instructing them that they can use a call center; and

    b)    providing qualifications for their customers and they types of individuals that PolicyScout must call. This included, but is not limited to, the states that PolicyScout was permitted to call and the time of day that they could transfer the calls.

30. 360 Insurance Group is also liable for PolicyScout telemarketing calls, as it explicitly hired PolicyScout to bring in new customers and knows it does so through telemarketing.

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

31.     360 Insurance Group knew (or reasonably should have known) that PolicyScout was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

32.     Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

33.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## VI.    CLASS ACTION ALLEGATIONS

34.     Cellular Telephone Class Definition: Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Plaintiff bring this case on behalf of two Class (each a "Class," collectively, the "Class"). The first Class (the "Cellular Telephone Class") is defined as follows: All persons in the United States to whom: (A) Defendants, any of them and/or a third party acting on any of their behalf made a pre-recorded call; (B) to a cellular telephone number; (C) using an artificial or prerecorded voice; (D) between four years prior to the filing of this lawsuit and the first day of trial.

35.     Exclusions: Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants, Defendants' legal representatives, assignees, and successors, the judges to whom this case is assigned and the employees and immediate family members of all of the foregoing.

1    36.    Numerosity: The Class is so numerous that joinder of all their members is
2    impracticable.

3    37.    360 Insurance engaged PolicyScouty to send automated telemarketing calls,
4    which is done *en masse*.

5    38.    Commonality: There are many questions of law and fact common to Plaintiff and
6    members of the Class. Indeed, the very feature that makes Defendants' conduct so annoying—its
7    automated nature—makes this dispute amenable to classwide resolution. These common
8    questions of law and fact include, but are not limited to, the following: (A) whether the calls
9    were dialed *en masse* using a pre-recorded message; (B) whether 360 Insurance is vicariously
10   liable for PolicyScout's conduct; (C) whether Defendants had a pattern and practice of failing to
11   obtain prior express written consent from people to whom it directed telemarketing; (D) whether
12   Defendants' violations of the TCPA were knowing or willful.

13   39.    Typicality: Plaintiff's claims are typical of the claims of the Class. Plaintiff's
14   claims and those of the Class arise out of the same course of conduct by Defendants and are
15   based on the same legal and remedial theories.

16   40.    Adequacy: Plaintiff will fairly and adequately protect the interests of the Class.
17   Plaintiff have retained competent and capable counsel experienced in TCPA class action
18   litigation. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf
19   of the Class and have the financial resources to do so. The interests of Plaintiff and their counsel
20   are aligned with those of the proposed Class.

21   41.    Superiority: The common issues arising from this conduct that affect Plaintiff and
22   members of the Class predominate over any individual issues, making a class action the superior
23   means of resolution. Adjudication of these common issues in a single action has important
24   advantages, including judicial economy, efficiency for Class members and classwide *res judicata*
25   for Defendants. Classwide relief is essential to compel Defendants to comply with the TCPA.
26   The interest of individual members of the Class in individually controlling the prosecution of
27   separate claims against Defendants are small because the damages in an individual action (up to
28   $1,500 per violation) are dwarfed by the cost of prosecution.

- 8 -
COMPL.
*Nichols v. 360 Insurance Group LLC*

1

2

**VII.   FIRST CLAIM FOR RELIEF**

**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)—Robocalling) On Behalf of Plaintiff and the Cellular Telephone Class)**

3

4

42.    Plaintiff reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

5

6

7

8

43.    Defendants and/or its affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to the cellular telephone numbers of Plaintiff and members of the Cellular Telephone Class using an artificial or prerecorded voice without prior express written consent, or by the fact that someone did so on their behalf.

9

10

44.    Plaintiff and members of that Class are entitled to an award of $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

11

12

45.    Plaintiff and members of that Class are entitled to an award of up to $1,500 in damages for each such knowing and/or willful violation. 47 U.S.C. § 227(b)(3).

13

14

15

16

46.    Plaintiff and members of that Class are also entitled to and do seek an injunction prohibiting Defendants and/or its affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to any cellular telephone number using an artificial or prerecorded voice.

17

**VIII.   PRAYER FOR RELIEF**

18

19

WHEREFORE, Plaintiff, on her own behalf and on behalf of all members of the Class, pray for judgment against Defendant as follows:

20

A.    Certification of the proposed Class;

21

B.    Appointment of Plaintiff as representative of the Class;

22

C.    Appointment of the undersigned counsel as counsel for the Class;

23

D.    A declaration that actions complained of herein violate the TCPA;

24

25

E.    An order enjoining Defendants and its affiliates, agents and related entities from engaging in the conduct set forth herein;

26

F.    An award to Plaintiff and the Class of damages, as allowed by law;

27

G.    Leave to amend this Complaint to conform to the evidence presented at trial; and

28

1    H.    Orders granting such other and further relief as the Court deems necessary, just,

2    and proper.

3                              **IX.    DEMAND FOR JURY**

4    Plaintiff demands a trial by jury for all issues so triable.

5

6    RESPECTFULLY SUBMITTED AND DATED this 6th day of October, 2022.

7

8                              By: */s/ Rachel E. Kaufman*
                               RACHEL E. KAUFMAN
9                              KAUFMAN P.A.
                               237 S Dixie Hwy, 4th Floor
10                             Coral Gables, FL 33133
                               Telephone: (305) 469-5881
11                             rachel@kaufmanpa.com
12                             *Attorney for Plaintiff and the Proposed Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

1   JOSHUA K. HAEVERNICK (SBN 308380)
    joshua.haevernick@dentons.com
2   DENTONS US LLP
3   1999 Harrison Street, Suite 1300
    Oakland, CA 94612
4   Telephone:    415 882-5000
    Facsimile:    415 882-0300
5
6   JORDAN CAMERON (Pro Hac Vice)
    Jordan.cameron@dentons.com
7   DENTONS DURHAM JONES PINEGAR
    3301 N. Thanksgiving Way, Suite 400
8   Lehi, UT 84093
    Telephone:      801-375-6600
9
10  ATTORNEYS FOR DEFENDANT AND
    CROSS-DEFENDANT POLICYSCOUT, LLC

11

12                     UNITED STATES DISTRICT COURT

13                     NORTHERN DISTRICT OF CALIFORNIA

14

15   TERRI LEE NICHOLS, individually and on        Civil Action No. 3:22-cv-03899-RS
     behalf of all those similarly situated
16                                                 **DEFENDANT AND CROSS-DEFENDANT**
17                     Plaintiff,                  **POLICYSCOUT, LLC'S NOTICE OF**
                                                   **MOTION AND MOTION TO DISMISS**
18              vs.                                **AMENDED COMPLAINT AND CROSS-**
                                                   **COMPLAINT FOR LACK OF**
19   360 INSURANCE GROUP LLC,                      **JURISDICTION AND STANDING;**
     POLICYSCOUT, LLC                              **MEMORANDUM OF POINTS AND**
20                                                 **AUTHORITIES**
                       Defendants.
21

22   360 INSURANCE GROUP, LLC                      Date:        December 1, 2022
                                                   Time:        1:30 p.m.
23                     Cross-Complainant,          Courtroom"   Courtroom 3, 17th Floor
                                                                Hon. Richard Seeborg
24              vs.

25   POLICYSCOUT, LLC and MOES 1 to 10

26                     Cross-Defendant.

27

28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882-5000

1

## NOTICE OF MOTION AND MOTION

2  **TO ALL PARTIES AND COUNSEL, PLEASE TAKE NOTICE** that on December 1,

3  2022, at 1:30 pm, or as soon thereafter as may be heard, in the courtroom of the Honorable Judge

4  Seeborg, San Francisco Courthouse, Courtroom 3 – 17th Floor, 450 Golden Gate Avenue, San

5  Francisco, CA 94102, Defendant and Cross-Defendant PolicyScout, LLC will and hereby does

6  move for an order dismissing the *Amended Complaint* ("Am Compl.") of Plaintiff Terri Nichols

7  and the *Cross-Complaint* ("Cross-Compl.") of Cross-Claimant, 360 Insurance, under Fed. R. Civ.

8  Pro. 12(b)(1) and 12(b)(2).

9      This *Motion* is based on this *Notice of Motion and Motion*, the *Memorandum*, the

10  arguments of counsel, the Declarations of Alex Cate, Cody Williams, and Jeff Richard, and any

11  other matter that the Court may properly consider.

12

13  Dated: October 18, 2022                DENTONS US LLP

14

15                              By: _____ */s/ Jordan Cameron*_____

16                                   Jordan Cameron

17                         ATTORNEYS FOR DEFENDANT AND
CROSS-DEFENDANT POLICYSCOUT,

18                         LLC

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1

## TABLE OF CONTENTS

Page

I.      INTRODUCTION.......................................................................................................... 1

II.     SUMMARY OF MOTION ............................................................................................ 1

III.    ALLEGED AND JUDICIALLY NOTICEABLE FACTS ............................................ 2

IV.     PLAINTIFF'S CLAIMS MUST BE DISMISSED AS THE COURT DOES NOT
        HAVE PERSONAL JURISDICTION OVER POLICYSCOUT. ...................................... 8

        A.      PolicyScout Is Not Subject To General Jurisdiction In California Because
                It Is Not "At Home" In California. .......................................................................... 8

        B.      Policyscout Is Not Subject To Specific Personal Jurisdiction In California
                Because The Alleged Controversy Did Not Involve Any Action Of
                Policyscout And Did Not Arise Out Of Any Conduct Aimed At California......... 10

                1.      Element 1 - Purposeful Direction............................................................... 11

                2.      Element 2 - Arising out of Forum Related Activities ................................ 13

                3.      Element 3 - Fair Play and Substantial Justice ........................................... 13

V.      THE COURT SHOULD DISMISS THE CROSS-COMPL. BECAUSE THE
        PARTIES AGREED THAT ANY DISPUTE BETWEEN THEM SHALL BE
        LITIGATED IN UTAH. ................................................................................................ 15

VI.     PLAINTIFF AND CROSS-CLAIMANT LACK STANDING TO ASSERT
        CLAIMS AGAINST POLICYSCOUT. ........................................................................ 16

VII.    FEES .............................................................................................................................. 17

VIII.   CONCLUSION .............................................................................................................. 18

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

Civil Action No. 3:22-cv-03899-RS            i            DEFENDANT POLICYSCOUT'S MOTION TO
                                                          DISMISS AM. COMPL. AND CROSS-COMPL.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

**TABLE OF AUTHORITIES**

**Page(s)**

<u>Federal Cases</u>

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................... 7

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*,
    223 F.3d 1082 (9th Cir. 2000) (holding modified by *Yahoo! Inc. v. La Ligue
    Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) on other
    grounds) ................................................................................................................... *passim*

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ........................................................................................................ 12

*Calder v. Jones*,
    465 U.S. 783 (1984) ........................................................................................................ 11

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ..................................................................................... 9, 14

*Core-Vent Corp. v. Nobel Indus., AB*,
    11 F.3d 1482 (9th Cir.1993) ........................................................................................... 11

*Curran v. Jerome Hotel*,
    26 F.3d 130 (9th Cir. 1994) .............................................................................................. 7

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977) .......................................................................................... 7

*Dole Food Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) ........................................................................................ 14

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
    905 F.3d 597 (9th Cir. 2018) ............................................................................................ 7

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .......................................................................................... 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) .......................................................................................................... 8

*Hirsch v. Blue Cross, Blue Shield of Kansas City*,
    800 F.2d 1474 (9th Cir. 1986) ........................................................................................ 12

*Hunt v. Erie Ins. Group*,
    728 F.2d 1244 (9th Cir. 1984) ........................................................................................ 10

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

*Kransco Mfg., Inc. v. Markwitz,*
   656 F.2d 1376 (9th Cir. 1981)............................................................................................ 10

*Krypt, Inc. v. Ropaar LLC,*
   No. 19-CV-03226-BLF, 2020 WL 32334 (N.D. Cal. Jan. 2, 2020) ......................................... 7

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992).......................................................................................................... 17

*Mavrix Photo, Inc. v. Brand Technologies, Inc.,*
   647 F.3d 1218 (9th Cir. 2011)...................................................................................... 10, 11

*MGA Entm't, Inc. v. Innovation First, Inc.,*
   525 F. App'x 576 (9th Cir. 2013)......................................................................................... 7

*Myers v. Bennett Law Offices,*
   238 F.3d 1068 (9th Cir. 2001)............................................................................................ 13

*Ott v. Mortgage Investors Corporation of Ohio, Inc.*
   65 F. Supp. 3d 1046 (D. Oregon 2014)............................................................................... 11

*Panavision Int'l, L.P. v. Toeppen,*
   141 F.3d 1316 (9th Cir. 1998).............................................................................................. 8

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004)......................................................................................... 8, 10

*Scott v. Breeland,*
   792 F.2d 925 (9th Cir. 1986)................................................................................................ 7

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016)..................................................................................................... 16, 17

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007)................................................................................................ 7

*Taylor v. Portland Paramount Corp.,*
   383 F.2d 634 (9th Cir. 1967)................................................................................................ 7

*Tuazon v. R.J. Reynolds Tobacco Co.,*
   433 F.3d 1163 (9th Cir. 2006)............................................................................................ 10

**California Cases**

*Edward Brown & Sons v. City and County of San Francisco,*
   36 Cal. 2d 272, 223 P.2d 231 (1950) .................................................................................. 13

*Furda v. Sup.Ct.* (1984)
   161 Cal. App. 3d 418 .......................................................................................................... 16

*Miller-Leigh LLC v. Henson* (2007)
152 Cal. App. 4th 1143 ........................................................................................................ 15

*Richtek USA, Inc. v. uPI Semiconductor Corp.* (2015)
242 Cal. App.4th 651 .......................................................................................................... 15

**Other State Cases**

*Edsall Const. Co. v. Robinson,*
804 P.2d 1039 (Mont. 1991) ............................................................................................... 10

**Federal Statutes**

Telephone Consumer Protection Act
47 U.S.C. § 227 .............................................................................................................. *passim*

**Other Authorities**

1 Am. Jur. 2d Actions § 41 .................................................................................................. 13

Federal Rule of Civil Procedure 12 ...................................................................................... 1

U.S. Const. Article III, § 2 ........................................................................................... 16, 17

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2      Defendant PolicyScout LLC ("PolicyScout") respectfully moves to dismiss the Am.

3   Compl. filed by Plaintiff, Terri Nichols ("Plaintiff"), and the Cross-Compl. filed by

4   Defendant/Cross-claimant, 360 Insurance ("Cross-Claimant") it in their entirety under Federal

5   Rules of Civil Procedure 12(b)(1) and 12(b)(6).

6   **I.      INTRODUCTION**

7      Plaintiff is a professional plaintiff who makes a living by inducing companies to place

8   telephone calls to her cellular phone, then suing those companies claiming violations of the

9   Telephone Consumer Protection Act ("TCPA"). PolicyScout is aware of at least six lawsuits

10  brought by Plaintiff against a variety of defendants in a variety of jurisdictions, using cookie cutter

11  complaints to assert class claims arising under the TCPA.

12     Based on PolicyScout's investigations and records, it appears as if Plaintiff visits websites

13  and voluntarily submits her personal information with the hope that someone will rely on her

14  consent and place a phone call to her. She is adept at navigating the phone calls and obtaining

15  information in order to identify companies to sue. As demonstrated by the facts in this case, if

16  Plaintiff does not answer the call, she will place a return call, feign interest in the products, ask

17  dozens of questions designed to lead the agent to a belief that Plaintiff is actually an interested

18  customer, and will ultimately use the information she obtains to file a lawsuit.

19     For reasons set forth in this *Motion*, Plaintiff's plan cannot form the basis of a lawsuit

20  against PolicyScout, much less a lawsuit in California where PolicyScout does not actively engage

21  in business. The court should dismiss the lawsuit in its entirety.

22  **II.     SUMMARY OF MOTION**

23     PolicyScout moves to dismiss this matter for lack of personal jurisdiction and standing. In

24  order for personal jurisdiction to be valid, there must be either general jurisdiction or specific

25  jurisdiction. The Federal District Court of California does not have either general or specific

26  jurisdiction over PolicyScout, as PolicyScout is not "at home" in California nor does the alleged

27  controversy arise out of any conduct committed by PolicyScout, much less that is aimed at

28  California.

Civil Action No. 3:22-cv-03899-RS          1          DEFENDANT POLICYSCOUT'S MOTION TO
                                                      DISMISS AM. COMPL. AND CROSS-COMPL.

1    Specifically, Plaintiff asserts a claim as a purported class representative against
2  PolicyScout for a voicemail she received on May 12, 2022. However, Plaintiff first initiated
3  contact with PolicyScout by visiting a website and requesting contact on Nov. 13, 2021. Plaintiff's
4  actions in initiating contact cannot form the basis for jurisdiction. Moreover, non-party Insuralife
5  left the voicemail, not PolicyScout. PolicyScout has engaged in no telephone communication
6  whatsoever with Plaintiff. On this basis, Plaintiff's claims must fail for lack of jurisdiction and
7  standing.

8    Cross-Claimant seeks indemnity pursuant to a written agreement arising from the alleged
9  voicemail. However, the written agreement dictates that any disputes between Cross-Claimant and
10  PolicyScout must be brought in Utah. Further, as stated, PolicyScout did not leave the email in
11  question. Accordingly, the court should not exercise jurisdiction over PolicyScout and because
12  PolicyScout did not place the call giving rise to this action, there is no action that could trigger any
13  indemnity obligation in any event. The court should dismiss the Cross-Compl.

14  **III.    ALLEGED AND JUDICIALLY NOTICEABLE FACTS**

15    1.    PolicyScout is a Delaware limited liability company with its principal place of
16  business in Utah. (*See Declaration of Alex Cate*, ¶ 2 (hereinafter "*Cate Decl.*")).

17    2.    PolicyScout is a sales lead generator for insurance companies. Consumers who are
18  interested in certain types of insurance either contact, or request contact from, PolicyScout, who
19  then connects the consumers with licensed insurance brokers in their area. (*See id*. at ¶ 3).

20    3.    PolicyScout does not sell products or services to consumers. (*See id*. at ¶ 4).

21    4.    PolicyScout has no connection to California, as none of its business activities
22  occur in California. (*See id*. at ¶ 5).

23    5.    PolicyScout is not, and has never been, registered to do business in California.
24  (*See id*. at ¶ 6).

25    6.    PolicyScout does not have, and has never had, any offices, property, assets,
26  telephone listings, or bank accounts in California. (*See id*. at ¶ 7).

27    7.    PolicyScout has never paid taxes in California. (*See id*. at ¶ 8).

28

Civil Action No. 3:22-cv-03899-RS        2        DEFENDANT POLICYSCOUT'S MOTION TO
                                                   DISMISS AM. COMPL. AND CROSS-COMPL.

1    8.    Currently, PolicyScout has around 200 employees. None are located in California

2  (*See id.* at ¶ 9).

3    9.    PolicyScout does not actively recruit employees in California. (*See id.* at ¶ 10).

4    10.    PolicyScout does not have, and has never had, any managers or officers in

5  California. (*See id.* at ¶ 11).

6    11.    PolicyScout maintains websites that are accessible nationally through which

7  consumers may request further communication from PolicyScout regarding insurance services

8  and offerings. (*See id.* at ¶ 12).

9    12.    All of PolicyScout's advertising is national and does not target any particular

10  State. (*See id.* at ¶ 13).

11    13.    PolicyScout does not have, and has never had, any sales personnel in California.

12  (*See id.* at ¶ 14).

13    14.    PolicyScout has never targeted or directed advertising at California. (*See id.* at

14  ¶ 15).

15    15.    PolicyScout has never engaged in any marketing campaign specifically directed at

16  California or to residents of California. (*See id.* at ¶ 16).

17    16.    PolicyScout has never hired any marketing affiliates or brand promoters in

18  California or elsewhere, to promote PolicyScout in California specifically. Similarly, PolicyScout

19  does not rely on any third party marketers or affiliates in California. (*See id.* at ¶ 17).

20    17.    PolicyScout does not engage in directed sales activity in California. Therefore,

21  PolicyScout has no incentive to communicate with any consumers in California, and does not

22  expressly direct any communications to residents of California. (*See id.* at ¶ 18).

23    18.    PolicyScout only communicates with consumers who first submit their

24  information requesting contact through PolicyScout's own websites, and sometimes through

25  websites of PolicyScout affiliates. (*See id.* at ¶ 19).

26    19.    In every case, PolicyScout is identified as a company who may contact the

27  consumer upon the consumer's request. (*See id.* at ¶ 20).

28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1    20.    PolicyScout does not initiate "cold" communication, but rather, it only responds

2  after consumers have initiated contact with PolicyScout, and completed an opt-in process. (*See id.*

3  at ¶ 21).

4    21.    PolicyScout does not have the ability to randomly generate numbers or

5  automatically dial sequential numbers. It relies exclusively on consumers providing their own

6  information. (*See id.* at ¶ 22).

7    22.    Once the consumer provides a phone number, the number is stored in a database in

8  an encrypted format. In this way, it protects consumer's personally identifiable information. (*See*

9  *id.* at ¶ 23).

10   23.    PolicyScout employees and affiliates are not privy to telephone information.

11  Unless a PolicyScout employee accessed the decrypted database, the employee would never learn

12  the phone number and would never see an area code. (*See id.* at ¶ 24).

13   24.    In any communication with consumers, PolicyScout strictly adheres to all laws,

14  and requires all of its third party providers and brand promoters to do the same. (*See id.* at ¶ 25).

15   25.    In mid 2021, PolicyScout entered into an agreement with Fluent, LLC, to assist in

16  disseminating information to interested consumers. (*See id.* at ¶ 26).

17   26.    Through the website www.finddreamjobs.com, Fluent presents a form allowing

18  consumers to request to be contacted for telemarketing. (*See Declaration of Jeff Richard,* ¶¶ 7-8

19  (hereinafter "*Richard Decl.*")).

20   27.    Fluent uses sophisticated technology to ensure the consumer actually consents to

21  be contacted and fulfills and submits a legitimate prior express written consent form. (*See id.* at

22  ¶¶ 2-6, 11-13).

23   28.    On November 13, 2021, Plaintiff engaged Fluent's finddreamjobs.com website,

24  filled out a prior express written consent form, and submitted it. (*See id.* at ¶¶ 8-9, *see also*

25  Exhibit A to *Richard Decl.*).

26   29.    The consent language on www.finddreamjobs stated, "By checking 'I AGREE'

27  and clicking 'SUBMIT' I understand that I expressly consent to be called and/or receive text

28  messages by our Marketing Partners at the landline or mobile phone number I provided. I confirm

Civil Action No. 3:22-cv-03899-RS          4          DEFENDANT POLICYSCOUT'S MOTION TO
                                                      DISMISS AM. COMPL. AND CROSS-COMPL.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1  that the number I provided is accurate and I am the regular user of the phone and that the call

2  and/or text message may be made using an autodialer and may include prerecorded messages. I

3  understand my consent is not required to perform a job search, or to purchase or use any goods or

4  services offered. For SMS message campaigns: Text STOP to stop and HELP for help. Msg &

5  data rates may apply. Periodic messages; max. 30/month. (*See id.* at ¶ 9).

6      30.    The reference to "Marketing Partners" was a hyperlink to a list of companies

7  included in the consent. (*See id.* at ¶ 10).

8      31.    The Marketing Partners list clearly and conspicuously identified PolicyScout and

9  Insuralife among others. (*See id.*).

10      32.    Insuralife is a registered DBA of Guidetoinsure, LLC, a Utah limited liability

11  company. (*See Declaration of Cody Williams*, ¶ 1 (hereinafter "*Williams Decl.*")).

12      33.    Insuralife was registered as a business on September 3, 2015. (*See id.* at ¶ 2).

13      34.    In 2021, PolicyScout acquired an equity interest in Insuralife. (*See id.* at ¶ 3; *Cate*

14  *Decl.* at ¶ 36).

15      35.    Insuralife is an insurance agency that qualifies consumers for insurance prior to

16  transferring them to closing agents. (*See Williams Decl.* at ¶ 5).

17      36.    PolicyScout and Insuralife are separate legal entities and operate as separate

18  business with distinct functions and purposes. Neither are agents for the other. (*See id.* at ¶ 4;

19  *Cate Decl.* at ¶ 38).

20      37.    Insurealife is not a party to this case. (*Williams Decl.* at ¶ 6; *Cate Decl.* at ¶ 39).

21      38.    Unless a consumer submits a phone number to PolicyScout (either through

22  PolicyScout's websites or its affiliate websites), PolicyScout will never become aware of, or

23  possess, the phone number. (*See Cate Decl.* at ¶ 28).

24      39.    Unless a consumer submits a phone number to Insuralife (either through its

25  websites or its affiliate websites), Insuralife will never become aware of, or possess, the phone

26  number. (*See Williams Decl.* at ¶ 11).

27      40.    On November 13, 2021, Plaintiff initiated contact with PolicyScout and Insuralife

28  through the finddreamjobs.com website, by providing her personal information, including her

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1    phone number, to the website through the IP Address of 174.194.147.237. (See Richard Decl. at

2    ¶¶ 8-9; *see also Cate Decl.* at ¶ 29; *Williams Decl.* at ¶¶ 7-8).

3        41.    The IP Address is associated with a mobile device. (*See Cate Decl.* at ¶ 30).

4        42.    In providing her information, including her telephone number, Plaintiff affirmed

5    her desire to receive communications from PolicyScout and Insuralife, thereby completing the

6    opt-in process. (*See Richard Decl.* at ¶¶ 8-13; *see also Cate Decl.* at ¶ 31; *Williams Decl.* at ¶ 9).

7        43.    Only then was Plaintiff's phone number delivered to PolicyScout and Insuralife.

8    (*See Cate Decl.* at ¶ 32; *see also Williams Decl.* at ¶ 10).

9        44.    At no point did Plaintiff opt-out from communications from either PolicyScout or

10   Insuralife. (*See Cate Decl.* at ¶ 33; *see Williams Decl.* at ¶ 12).

11       45.    Despite that PolicyScout received lawful consent to contact Plaintiff, PolicyScout

12   never contacted Plaintiff in any way. (*Cate Decl.* at ¶ 34).

13       46.    On May 12, 2022, non-party, Insuralife, relying on the consent Plaintiff provided,

14   and in response to Plaintiff's initial contact, responded to Plaintiff's request by placing a single

15   manually dialed phone call to Plaintiff. (*See Williams Decl.* at ¶ 14).

16       47.    Plaintiff did not answer her phone, so Insuralife left a voicemail. (*See id.* at ¶ 15).

17       48.    The voicemail clearly identified Insuralife and provided a call-back number. (*See*

18   *id.* ¶ 16).

19       49.    Thereafter, Plaintiff initiated contact with Insuralife by placing a call to Insuralife

20   to discuss insurance options. (*See id.* at ¶ 18).

21       50.    A no point did Plaintiff express a desire not to be contacted by Insuralife. (*See id.*

22   at ¶ 19).

23       51.    On May 4, 2022, PolicyScout entered into a New Insertion Order ("Insertion

24   Order") with non-party, 360 Insurance. (*See Cate Decl.* at ¶ 40, Agreement, Exhibit 1 to Cate

25   Decl.)

26       52.    Also on May 4, 2022, PolicyScout entered into an Insurance Lead Purchase

27   Agreement ("Lead Agreement") with 360 Insurance. (*See id.*)

28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1    53.    The Insertion Order and Lead Agreement are collectively referred to herein as

2  "Agreement."

3    54.    The Agreement states, "This Agreement shall be governed by, and construed and

4  enforced in accordance with, the laws of the State of Utah. Buyer hereby expressly consents to

5  the personal jurisdiction of the state and federal courts in the state of Utah and agrees that any

6  action brought pursuant to this Agreement shall be brought in a court located in the state of

7  Utah." (*Agreement* at ¶ 13.4)

8                                   **LEGAL STANDARD**

9        When considering personal jurisdiction, the court presumes well-pleaded facts in the

10  complaint are true with two important limitations.[1] First, the presumption does not extend to

11  conclusory allegations, implausible claims, speculation, or conjecture. *See id.*; *see also Swartz v.*

12  *KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). Second, a defendant may overcome the

13  presumption with an affidavit contradicting the complaint's jurisdictional allegations. *Taylor v.*

14  *Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967) ("We do not think that the mere

15  allegations of the complaint, when contradicted by affidavits, are enough to confer personal

16  jurisdiction of a nonresident defendant.")

17        When the defendant does supply a declaration, the Court must presume the conclusions

18  stated in the declaration are true rather than the complaint's allegations. *Curran v. Jerome Hotel*,

19  26 F.3d 130, *2 (9th Cir. 1994) ("Curran's conclusory allegations in her pleading were not

20  sufficient to contradict Hotel's affidavit."); *see also MGA Entm't, Inc. v. Innovation First, Inc.*,

21

22

_____

23  [1] *Krypt, Inc. v. Ropaar LLC*, No. 19-CV-03226-BLF, 2020 WL 32334, at *2 (N.D. Cal. Jan. 2,
2020) ("'Uncontroverted allegations in the complaint must be taken as true, and factual disputes

24  are construed in the plaintiff's favor.' *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905
F.3d 597, 602 (9th Cir. 2018). If, however, the defendant adduces evidence controverting the

25  allegations, the plaintiff must 'come forward with facts, by affidavit or otherwise, supporting
personal jurisdiction,' *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986), for a court 'may not

26  assume the truth of allegations in a pleading which are contradicted by affidavit.' *Data Disc, Inc.
v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). Moreover, conclusory allegations

27  or 'formulaic recitation of the elements' of a claim are not entitled to the presumption of truth.
*Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). 'Nor is the court required to accept as true

28  allegations that are ... unwarranted deductions of fact, or unreasonable inferences.' *In re Gilead
Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).").

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1  525 F. App'x 576, 577 (9th Cir. 2013) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551

2  F.2d 784, 787–88 (9th Cir. 1977)) (internal citations omitted).

## IV.  PLAINTIFF'S CLAIMS MUST BE DISMISSED AS THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER POLICYSCOUT.

5  Plaintiff's case arises under the Telephone Consumer Protection Act, which does not

6  govern personal jurisdiction. "When no federal statute governs personal jurisdiction, the district

7  court applies the law of the forum state." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320

8  (9th Cir. 1998). California's long arm statute "is coextensive with federal due process

9  requirements . . . ." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir.

10  2004). Therefore, "the jurisdictional analyses under state law and federal due process are the

11  same." *Id.* at 801 (citing *Panavision*, 141 F.3d at 1320).

12  Here, the Court lacks jurisdiction over PolicyScout under both general and specific

13  jurisdiction theories because the exercise of jurisdiction under either theory would offend due

14  process.

### A.  PolicyScout Is Not Subject To General Jurisdiction In California Because It Is Not "At Home" In California.

17  General jurisdiction is appropriate only if the defendant's contacts with the forum are so

18  "continuous and systematic" that it is "at home in the forum State." *Goodyear Dunlop Tires*

19  *Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also Bancroft & Masters, Inc. v.*

20  *Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (holding modified by *Yahoo! Inc. v. La*

21  *Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) on other grounds).

22  "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages

23  in business in the state, serves the state's markets, designates an agent for service of process,

24  holds a license, or is incorporated there." *See Bancroft*, 223 F.3d at 1086 (*citing Hirsch v. Blue*

25  *Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986)). PolicyScout does not

26  have any such contacts in California.

27  PolicyScout is not registered to do business in California, and has no offices, property,

28  assets, telephone listings, or bank accounts in California. *(See Cate Decl.*, at ¶¶ 5-7). PolicyScout

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1    does not pay taxes in California. (*Id*. at ¶ 8). PolicyScout has around 200 employees, none of

2    whom are in California. (*See id.* at ¶ 9). PolicyScout does not actively recruit employees in

3    California, and has no officers or managers in California. (*See id*. at ¶¶ 10-11).

4            Further, PolicyScout's advertising is national in nature and does not directly target

5    California residents. (*See Cate Decl*., at ¶ 13). PolicyScout does not engage in directed sales

6    activity in California, and makes no revenue through sales in California. (*See id.* at ¶ 18). Even if

7    it had, "engaging in commerce with residents of the forum state is not in and of itself the kind of

8    activity that approximates physical presence within the state's borders." *Bancroft*, 223 F.3d at

9    1086 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984)).

10           In *CollegeSource, Inc. v. AcademyOne, Inc*., the plaintiff argued that the court had

11   general jurisdiction over the defendant. 653 F.3d 1066 (9th Cir. 2011). In that case, it was

12   demonstrated that defendant was subject to general jurisdiction because they "misappropriated

13   CollegeSource's catalogs and course descriptions in California; markets its services to California

14   students and educational institutions; has three hundred registered uses and two paid subscribers

15   in California; and maintains a 'highly interactive' website." *Id*. at 1074. On these facts, the

16   plaintiff claimed that there were continuous and systematic general business contacts.

17           The court ultimately determined that "AcademyOne's California activities do not

18   'approximate physical presence' in California, so AcademyOne is not subject to general

19   jurisdiction in California." *Id.* at 1076. The court came to this conclusion because the

20   misappropriation was based on a few discrete acts rather than a continuous and systematic

21   activity, AcademyOne had no offices or staff in California, they were not registered to do

22   business there, nor did they pay state taxes. *Id.* at 1074-75. The court also stated, "if the

23   maintenance of an interactive website were sufficient to support general jurisdiction in every

24   forum in which users interacted with the website, 'the eventual demise of all restrictions on the

25   personal jurisdiction of state courts' would be the inevitable result. *Id*. at ¶ 1075-76 (*quoting*

26   *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294, 100 S.Ct. 559, 62 L.Ed.2d 490

27   (1980)).

28

1    Here, given PolicyScout's lack of physical presence in California, and its lack of

2    continuous and systematic contact of any kind with California or any residents thereof,

3    PolicyScout's national advertising is insufficient to find PolicyScout "at home" in California.

4    General jurisdiction does not exist. *See Bancroft*, 223 F.3d at 1086.

**B.     Policyscout Is Not Subject To Specific Personal Jurisdiction In California Because The Alleged Controversy Did Not Involve Any Action Of Policyscout And Did Not Arise Out Of Any Conduct Aimed At California.**

For specific jurisdiction to exist, the controversy in question must "relate[] to or arise[] out of a defendant's contacts with the forum." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-02 (9th Cir. 2004) (*quoting Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987)). At the outset, the only conduct alleged against PolicyScout is a single voicemail left with Plaintiff. However, PolicyScout did not initiate the call or leave the voicemail, Insuralife did. (*Cate Decl.* at ¶ 34). Even if PolicyScout had left the voicemail, "interstate communication is an almost inevitable accompaniment to doing business in the modern world, and cannot by itself be considered a 'contact' for justifying the exercise of personal jurisdiction." *Edsall Const. Co. v. Robinson*, 804 P.2d 1039, 1042 (Mont. 1991) (*citing Simmons v. State*, 670 P.2d 1372, 1380 (Mont. 1983)). Therefore, even if PolicyScout had engaged in the alleged conduct, the Court would not have personal jurisdiction over it.

Moreover, for a court to exercise person jurisdiction over a nonresident defendant consistent with due process, the "defendant must have 'certain minimum contacts' with the relevant forum." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (*citing Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945)); *see also Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168-69 (9th Cir. 2006); *Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376, 1378 (9th Cir. 1981); *Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1246 (9th Cir. 1984).

The Ninth Circuit uses a three-part test to analyze whether a party's minimum contacts meet the due process standard for the exercise of specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1  purposefully avails himself of the privilege of conducting activities in the forum, thereby
   invoking the benefits and protections of its laws;

2

3  (2) the claim must be one which arises out of or relates to the defendant's forum-related
   activities; and

4  (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it
   must be reasonable.

5

6  *Core-Vent Corp. v. Nobel Indus., AB*, 11 F.3d 1482, 1485 (9th Cir.1993) (*quoting Lake v.*

7  *Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

8  **1.    Element 1 - Purposeful Direction**

9  Courts analyze purposeful direction using the three-part Calder "effects test." *Mavrix*

10  *Photo Inc,* 647 F.3d at 1228; *see also Calder v. Jones*, 465 U.S. 783, 787 (1984). To meet the

11  "effects test," the defendant must have "(1) committed an intentional act, [which was] (2)

12  expressly aimed at the forum state, [and] (3) caus[ed] harm that the defendant knows is likely to

13  be suffered in the forum state." *Id.* However, Calder does not "stand for the broad proposition that

14  a foreign act with foreseeable effects in the forum state always gives rise to specific

15  jurisdiction . . . there must be something more . . . ." *Bancroft*, 223 F.3d at 1087 (internal citations

16  omitted) (*citing Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998)). The

17  "something more" is "wrongful conduct targeted at a plaintiff whom the defendant knows to be a

18  resident of the forum state." *Bancroft*, 223 F.3d at 1087. Here, PolicyScout has never targeted any

19  intentional act at Plaintiff. In fact, it did not place the call in question or leave the voicemail. Even

20  if it had, the communication was not wrongful because Plaintiff requested and consented to the

21  contact. Moreover, the Plaintiff has not suffered any harm, especially as the result of any actions

22  of PolicyScout.

23  In *Ott v. Mortgage Investors Corporation of Ohio, Inc.*, the Oregon Federal court applied

24  the "effects test" to a claim involving allegedly unlawful text messaging under the TCPA. *See* 65

25  F. Supp. 3d 1046 (D. Oregon 2014). There, the defendant sent text messages "[f]rom its offices"

26  where it had "hundreds of telemarketers" making "outbound telephone calls." *Id*. at 1054. The

27  defendant sent messages to plaintiff's Oregon phone numbers. *See id*. at 1057. The court reasoned

28  that because of the existence of the Oregon area codes in the phone numbers, "defendants knew or

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1  should have known that the telemarketing scheme was aimed at persons in Oregon." *Id.* This case
2  is materially distinguishable from *Ott* for a number of reasons, and Plaintiff cannot satisfy its
3  burden to show "something more" required by *Bancroft*.

4  First, PolicyScout does not engage in any outbound communication without the consumer
5  having first initiated contact. (*See Cate Decl.* at ¶19). In other words, all communication made by
6  PolicyScout is done in response to a valid consent and request for contact. (*See Cate Decl.* at
7  ¶ 21). There is no intentional wrongful conduct directed at anybody, including Plaintiff. Further,
8  PolicyScout did not engage in any communication whatsoever with Plaintiff. (*See id.* at ¶ 34).

9  Second, the alleged conduct was not expressly aimed at the forum State. All phone
10 numbers in PolicyScout's database are encrypted, so area codes are not readily visible. (*See id.* at
11 ¶¶ 23-24). Moreover, in this instance, PolicyScout did not even place the call or leave the
12 voicemail. (*See id.* at ¶ 34). As PolicyScout was not involved in the call or delivery of the
13 voicemail, it had no knowledge of when, where, or how such was sent and cannot be said to have
14 expressly aimed any conduct at the forum. (*See id.*). Moreover, Plaintiff's phone number has a
15 757 area code, which is in Virginia, not California. (*See Richard Decl.* at ¶ 13). Even if
16 PolicyScout had called the number, it would have had no reason to believe Plaintiff was in
17 California and therefore, could not have expressly aimed any conduct there.

18 Further, it is well settled that a plaintiff's unilateral activity cannot give rise to personal
19 jurisdiction over a defendant; rather, the analysis "turns upon whether the defendant's contact are
20 attributable to actions by the defendant himself." *Hirsch v. Blue Cross, Blue Shield of Kansas*
21 *City*, 800 F.2d 1474, 1478 (9th Cir. 1986) (internal quotations marks and citations omitted); *see*
22 *also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (holding that a defendant
23 cannot be hauled into a jurisdiction based solely on "the unilateral activity of another party or a
24 third person"). Here, Plaintiff, not PolicyScout, initiated the communication. (*See Richard Decl.*
25 at ¶¶ 8-13). PolicyScout did not even respond to the communication. (*See Cate Decl.* at ¶ 34).
26 Rather, Insuralife, a separate company, did. (*See Williams Decl.* at ¶¶ 7-14). Such cannot form the
27 basis for jurisdiction over PolicyScout.

28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1    Regarding the third element—harm caused by the defendant's conduct—for years, courts

2 have recognized the fundamental principle that where a plaintiff consents to the conduct

3 complained of, they cannot state a claim for harm stemming from that conduct. *Edward Brown &*

4 *Sons v. City and County of San Francisco*, 36 Cal. 2d 272, 279, 223 P.2d 231 (1950) ("It is a

5 familiar maxim of jurisprudence that 'He who consents to an act is not wronged by it.'"); 1 Am.

6 Jur. 2d Actions § 41 ("It is a general principle, expressed in the maxim 'volenti non fit injuria,'

7 that no one may maintain an action to recover for an injury occasioned by an act to which he or

8 she has consented."). Here, Plaintiff voluntarily initiated first contact via the opt-in process, and

9 never opted-out from receiving future communication. (*See Richard Decl.* at ¶¶ 8-13; *Cate Decl.*

10 at ¶¶ 29-33). Therefore, even if PolicyScout had contacted Plaintiff, which it did not, Plaintiff

11 would still have no basis to allege that she has suffered harm as the result of any communication

12 by PolicyScout.

13    Because PolicyScout has not engaged in any intentional, wrongful act aimed at California

14 or its residents, and because PolicyScout has not caused any harm in California, let alone to

15 Plaintiff, the purposeful direction element of specific jurisdiction fails.

16    **2.    Element 2 - Arising out of Forum Related Activities**

17    The Ninth Circuit follows the "but for" test to determine whether a plaintiff's claim arises

18 out of the defendant's conduct directed towards the forum. *See Myers v. Bennett Law Offices*, 238

19 F.3d 1068, 1075 (9th Cir. 2001). Under the "but for" test, plaintiff must show that they would not

20 have suffered an injury 'but for' the defendants' forum-related conduct. *Id.*

21    As argued above, PolicyScout has not engaged in any conduct directed toward the forum,

22 much less involving Plaintiff. It cannot be said that "but for" PolicyScout's conduct, Plaintiff

23 would not have suffered injury. In fact, it was Plaintiff's own conduct that triggered the

24 communication to begin with, and the communication was not made by PolicyScout. On this

25 basis, personal jurisdiction fails.

26    **3.    Element 3 - Fair Play and Substantial Justice**

27    "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts

28 to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be

Civil Action No. 3:22-cv-03899-RS          13          DEFENDANT POLICYSCOUT'S MOTION TO
                                                        DISMISS AM. COMPL. AND CROSS-COMPL.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1  reasonable." *Id.* at 1055 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

2  Here, Plaintiff has failed the first two prongs. Therefore, PolicyScout does not carry the burden

3  for the third element.

4  *Arguendo*, reasonableness depends on seven factors: (1) the extent of the defendant's

5  purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in

6  the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the

7  forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the

8  controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective

9  relief; and (7) the existence of an alternative forum. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104,

10  1114 (9th Cir. 2002).

11                    a.    *Purposeful Injection*

12        PolicyScout has no affairs in the forum state or with Plaintiff. (*See Cate Decl.* at ¶ 5, 42).

13  Therefore, this factor favors PolicyScout.

14                    b.    *Burden on the parties*

15        PolicyScout is a Delaware limited liability company with its principal place of business in

16  Utah. (*See Cate Decl.* at ¶ 2). Its operations are in Utah, as is all evidence supporting its defenses

17  to the claims at issue. PolicyScout has not availed itself of doing business in California. (*See Cate*

18  *Decl.* at ¶¶ 5-25). While PolicyScout has a contractual relationship with 360 Insurance, as argued

19  below, the contract dictates that any dispute between shall be brought in Utah.

20        In candor to the Court, given "advances in transportation and telecommunications and the

21  increasing interstate practice of law, any burden of litigation in a forum other than one's residence

22  is substantially less than in days past." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066,

23  1080 (9th Cir. 2011) (cleaned up) (*quoting Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007)).

24  Accordingly, the potential burden on either party to this case is potentially equal. However, in the

25  Ninth Circuit, "Plaintiff's convenience is not of paramount importance." *Dole*, 303 F.3d at 1116.

26  Therefore, these factors tip slightly in PolicyScout's favor.

27

28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1

c.    *Sovereignty Concerns*

2        The concern over sovereignty is whether California's exercise of jurisdiction over a Utah

3  resident would conflict with Utah state law. Since the TCPA is a federal law, no conflict exists.

4

d.    *Forum's Interest in Adjudication*

5        In candor to the Court, the "Ninth Circuit assumes that a forum state maintains a strong

6  interest in providing an effective means of redress for its residents tortiously injured." *Ott*, 65 F.

7  Supp. 3d at 1058–59 (cleaned up) (citing Panavision, 141 F.3d at 1323). However, Plaintiff was

8  not injured by any action of PolicyScout. Accordingly, while this factor would typically favor

9  jurisdiction in California, as Plaintiff suffered no injury by any action of PolicyScout, this prong

10 favors dismissal.

11

e.    *Efficient Judicial Resolution*

12       This factor focuses on the location of the evidence and witnesses. As stated, all of

13 PolicyScout's potential witnesses and evidence relevant to the claims are in Utah. (*See Cate Decl.*

14 at ¶ 2).

15

f.    *Alternative Forum*

16       Utah is a more appropriate alternative forum. It is the residence of PolicyScout,

17 and the location of all of PolicyScout's witnesses and evidence. It is also the forum selected by

18 360 insurance and PolicyScout for disputes between them.

19

g.    *Conclusion*

20       The seven factors tip in PolicyScout's favor, and jurisdiction over PolicyScout in

21 California is improper.

22

**V.    THE COURT SHOULD DISMISS THE CROSS-COMPL. BECAUSE THE
23      PARTIES AGREED THAT ANY DISPUTE BETWEEN THEM SHALL BE
        LITIGATED IN UTAH.**
24

25       An agreement to litigate in a forum outside California empowers the court to decline to

26 exercise its jurisdiction. *Miller-Leigh LLC v. Henson* (2007) 152 Cal. App. 4th 1143, 1149. A

27 mandatory forum-selection clause "will usually be given effect unless it is unfair or

28 unreasonable." *Id.* at 1149; *Richtek USA, Inc. v. uPI Semiconductor Corp.* (2015) 242 Cal.

Civil Action No. 3:22-cv-03899-RS        15        DEFENDANT POLICYSCOUT'S MOTION TO
                                                   DISMISS AM. COMPL. AND CROSS-COMPL.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1  App.4th 651, 661 (A party seeking to defeat such a clause bears the burden of proving that its
2  enforcement would be unfair or unreasonable under the circumstances of the case). If a valid
3  forum-selection contract requires the dispute to be litigated in a different state or country, and the
4  choice is reasonable, a California court normally will stay or dismiss a local action without
5  analyzing the "convenience" factors. *See Furda v. Sup.Ct.* (1984) 161 Cal. App. 3d 418, 426.

6  On or around May 4, 2022, PolicyScout entered an Insertion Order with Cross-Claimant.
7  (*See Cate Decl.* at ¶¶ 40; *see also* Exhibit 1 to *Cate Decl.*). Also as part of the Agreement, on or
8  around May 4, 2022, PolicyScout entered into a Lead Agreement with 360 Insurance. (*Id.*) The
9  Agreement states, "This Agreement shall be governed by, and construed and enforced in
10  accordance with, the laws of the State of Utah. Buyer hereby expressly consents to the personal
11  jurisdiction of the state and federal courts in the state of Utah and agrees that any action brought
12  pursuant to this Agreement shall be brought in a court located in the state of Utah." (*Agreement* at
13  ¶ 13.4)

14  The forum and jurisdiction clause is clear, fair, and reasonable. Cross-Complainant is
15  required to abide by the bargained terms of the contract, including the parties' election that all
16  disputes be litigated in Utah. Because there is nothing unreasonable about requiring disputes
17  under the Agreement to be brought in Utah, the court should decline to exercise jurisdiction over
18  this dispute. Further, in light of the fact that this court lacks jurisdiction over PolicyScout for
19  Plaintiff's claims, and where Plaintiff lacks standing to assert claims against PolicyScout, any
20  claim by Cross-Complainant should be required to be brought pursuant to the bargained-for
21  Agreement of the parties.

22  On this basis, the court should dismiss the Cross-Compl.

23  **VI.   PLAINTIFF AND CROSS-CLAIMANT LACK STANDING TO ASSERT CLAIMS
24         AGAINST POLICYSCOUT.**

25  Article III limits federal judicial power to "Cases" and "Controversies." U.S. Const. art.
26  III, § 2. Standing to sue "limits the category of litigants empowered to maintain a lawsuit in
27  federal court to seek redress for a legal wrong . . . " *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338
28  (2016). To satisfy Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2)

Civil Action No. 3:22-cv-03899-RS       16       DEFENDANT POLICYSCOUT'S MOTION TO
                                                 DISMISS AM. COMPL. AND CROSS-COMPL.

1  that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

2  redressed by a favorable judicial decision." *Id.* (applying the traditional standing test from *Lujan*

3  *v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

4  In *Spokeo*, the Court reiterated that "Article III standing requires a concrete injury even in

5  the context of a statutory violation," and that a plaintiff does not "automatically satisf[y] the

6  injury-in-fact requirement whenever a statute grants a person a statutory right and purports to

7  authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341.

8  Here, Plaintiff lacks standing because she has suffered no injury in fact from conduct

9  fairly traceable to PolicyScout. PolicyScout did not place the telephone call in question.

10 PolicyScout did not leave the voicemail in question. Therefore, even if such conduct satisfied the

11 "concrete injury" required for standing, because PolicyScout did not engage in the conduct,

12 Plaintiff lacks standing to sue PolicyScout.

13 Similarly, Cross-Claimants entire case is based on the alleged communication between

14 PolicyScout and Plaintiff. In summary, Cross-Claimant relies on Plaintiff's allegations and asserts

15 a claim for indemnity based thereon. However, as stated, PolicyScout did not place the call or

16 leave the voicemail in question, and therefore, no action of PolicyScout has caused any injury to

17 Cross-Claimant or gives rise to any indemnification requirement of PolicyScout.

18 On this basis, the court should dismiss the Am. Compl. and the Cross-Compl.

19 **VII.   FEES**

20 In an action to enforce a contract authorizing an award of fees and costs to one party, the

21 party "prevailing on the contract" is entitled to reasonable fees. *See* C.C. § 1717. Section 12, of

22 the Agreement states:

23     If any legal action or other proceeding is brought for the enforcement of this Agreement or
        because of any alleged dispute, breach, default or misrepresentation in connection with
24     any of the provisions of this agreement, the prevailing party shall be entitled to recover its
        reasonable attorneys' fees and other fees and costs incurred in any such action or
25     proceeding in addition to any other relief to which such party may be entitled.

26 Upon dismissal of this action, PolicyScout will have prevailed in the action arising under

27 the Agreement. Accordingly, the Court should award PolicyScout its attorney's fees. PolicyScout

28

Civil Action No. 3:22-cv-03899-RS          17          DEFENDANT POLICYSCOUT'S MOTION TO
                                                        DISMISS AM. COMPL. AND CROSS-COMPL.

1   will submit an Affidavit of fees upon entry of an order setting forth its entitlement to fees in this

2   action.

3   **VIII.   CONCLUSION**

4        Based on the foregoing, the court should dismiss the Am. Compl. and Cross-Compl. in

5   their entirety.

6

7   Dated: October 18, 2022                          Respectfully submitted

8                                                    DENTONS US LLP

9

10                                                   By:  _____*/s/ Jordan Cameron*_____
                                                              Jordan Cameron
11

12                                                   ATTORNEYS FOR DEFENDANT AND
                                                     CROSS-DEFENDANT POLICYSCOUT,
13                                                   LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

# EXHIBIT C

1 | JOSHUA K. HAEVERNICK (SBN 308380)
joshua.haevernick@dentons.com
2 | DENTONS US LLP
3 | 1999 Harrison Street, Suite 1300
Oakland, CA 94612
4 | Telephone:    415 882-5000
Facsimile:    415 882-0300
5 |
6 | JORDAN CAMERON (*Pro Hac Vice*)
Jordan.cameron@dentons.com
7 | DENTONS DURHAM JONES PINEGAR
3301 N. Thanksgiving Way, Suite 400
8 | Lehi, UT 84093
Telephone: 801-375-6600
9 |
10 | ATTORNEYS FOR THIRD-PARTY
DEFENDANT POLICYSCOUT, LLC

11 |

12 | UNITED STATES DISTRICT COURT

13 | NORTHERN DISTRICT OF CALIFORNIA

14 |

15 |

16 | TERRI LEE NICHOLS, individually and on behalf of all those similarly situated | Civil Action No. 3:22-cv-03899-RS

17 | Plaintiff, | Unlimited Jurisdiction

18 | vs. | **DECLARATION OF JEFF RICHARD IN SUPPORT OF POLICYSCOUT LLC'S MOTION TO DISMISS AMENDED COMPLAINT AND CROSS-COMPLAINT**

19 | 360 INSURANCE GROUP LLC,
20 | POLICYSCOUT, LLC,

21 | Defendant.

22 | 360 INSURANCE GROUP LLC

23 | Cross-Complainant,

24 | vs.

25 | POLICYSCOUT LLC and MOES 1 to 10

26 | Cross-Defendants.

27 |

28 |

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882-5000

Civil Action No. 3:22-cv-03899-RS

DECLARATION OF JEFF RICHARD IN
SUPPORT OF MOTION TO DISMISS AM.
COMPL. AND CROSS-COMPL.

1    I, Jeff Richard, based on my review of company records, and having personal knowledge

2    of the matters asserted herein, do hereby declare as follows:

3    1.    I am the Senior Director of Data Privacy & Compliance for Fluent, LLC

4    ("Fluent"), one of the leading performance marketing companies specializing in connecting

5    consumers with brands. I hold a bachelor's degree in Enterprise Economics from Florida Atlantic

6    University. I am also a Certified Internet Privacy Professional ("CIPP/US"), the certificate for

7    which was issued by the International Association of Privacy Professionals ("IAPP"). In my role

8    with Fluent, I am familiar with the consumer facing websites operated by Fluent and its wholly

9    owned subsidiaries, the types of data stored in Fluent's database of system and user information

10   ("Database"), and the Fluent integration with Jornaya's TCPA Guardian product & the LeadiD

11   program (https://www.jornaya.com), more fully discussed below. The contents of this declaration

12   are based on my personal knowledge, including my review of records kept in the normal course

13   of Fluent's business. If called as a witness in this action, I could and would testify competently to

14   the facts stated herein.

15   2.    Fluent maintains its Database in the ordinary course of its business operations as

16   part of its business records. The Database is maintained on redundant servers located in Ashburn,

17   Virginia under a Hosting Services Agreement with Rackspace US, Inc.

18   3.    The Database stores several pieces of data about a consumer, including personal

19   information submitted by a consumer, such as first name, last name and phone number. Website

20   session data, including a consumer's interaction with content found on the Fluent website, such as

21   a website form, is also stored. The website session data also includes the consumer's interaction

22   with content ("Consumer Session").

23   4.    Some of the data collected and stored in the Database from a Consumer Session

24   allows Fluent to understand the consumer experience with the Fluent website, including data

25   specific to a consumer's interaction with web forms that request and collect prior express written

26   consent under the Telephone Consumer Protection Act ("PEWC"). The data collected in support

27   of PEWC and other related information from the Consumer Session are associated with an

28   identifier called a Jornaya LeadiD, commonly referred to as the Jornaya token ("Token"). This

Civil Action No. 3:22-cv-03899-RS          1          DECLARATION OF JEFF RICHARD IN
                                                      SUPPORT OF MOTION TO DISMISS AM.
                                                      COMPL. AND CROSS-COMPL.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1 Token is stored in the Fluent's Database and associated with the phone number, first name and
2 last name collected during the Consumer Session.

3     5.      Fluent websites are integrated with Jornaya through the implementation of a
4 snippet of JavaScript code developed and maintained by Jornaya. This snippet of JavaScript code
5 is deployed within certain portions of the Fluent websites that request and collect PEWC. When a
6 consumer accesses the portion of the Fluent websites that request and collect PEWC, the
7 JavaScript code is loaded and a Token is created. Once the Token is created, the Jornaya platform
8 then begins to document the interactions a consumer has with the PEWC process and associates
9 this data with the Token created for that Consumer Session. Any personal data witnessed and
10 collected by Jornaya and associated with the Token, such as first name and last name, is
11 anonymized using a one-way hashing algorithm, protecting the consumer's privacy, then stored
12 by Jornaya in its database. Hashing is the process of generating a value from a text input using a
13 one-way cryptographic algorithm that enables the security of consumer information and data.

14     6.      In the event there is a dispute between a consumer and a caller regarding the
15 provision of PEWC, the TCPA Guardian service subscribed to by Fluent allows for the retrieval
16 of proof of such PEWC ("Compliance Report") based on the Token and anonymized data
17 collected during the Consumer Session and stored in the Jornaya database. The Compliance
18 Report, consisting of lead event data, the witnessed consent disclosures and a recreated consumer
19 experience ("Visual Playback") assists Fluent with providing proof of PEWC from an
20 independent 3rd party, Jornaya.

21                   **Compliance Report**

22     7.      In support of proving PEWC, Fluent, through their TCPA Guardian account,
23 retrieved the Compliance Report specific to Plaintiff's Consumer Session. Attached as Exhibit A
24 is the Compliance Report PDF containing Token 62832326-D224-36CF-1140-3A301D80EBAE,
25 with a lead event date of Nov. 13, 2021.

26     8.      On Nov. 13, 2021, the Plaintiff engaged in a Consumer Session on a website called
27 FindDreamJobs (https://www.finddreamjobs.com) from IP address 174.194.147.237.
28 FindDreamJobs is owned and operated by Fluent.

Civil Action No. 3:22-cv-03899-RS     2     DECLARATION OF JEFF RICHARD IN
                                      SUPPORT OF MOTION TO DISMISS AM.
                                      COMPL. AND CROSS-COMPL.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1    9.     During the Plaintiff's Consumer Session on Nov. 13, 2021, Plaintiff witnessed a

2    FindDreamJobs website form requesting PEWC to be contacted by telemarketing. Below is a

3    screenshot of the exact website form witnessed by the Plaintiff, with the Plaintiff's hashed,

4    anonymized version of the phone number clearly and conspicuously inputted into the phone

5    number form field, the consent disclosures witnessed by the Plaintiff and the "I Agree" checkbox

6    'unchecked':



21    10.    Within the Marketing Partners hyperlink found in the PEWC disclosure, a

22   hyperlink witnessed by the Plaintiff, the Defendant's name, PolicyScout. as well as Insuralife is

23   found. This data is corroborated by the Compliance Report. A screenshot of the relevant portion

24   of the Marketing Partners list, identifying Defendant's and Insuralife's name as documented by

25   the Compliance Report:

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

Labeled TCPA Disclosure Statement
captured at the lead event:

EDGE, INSUREALIFE, INTEGRITY VEHICLE SERVICES J - JB PRITZKER FOR GOVERNOR, JOB SPOTTER, JOBSONDEMAND, JOBSPOTTER, JVJ INSURANCE MARKETING SERVICES LLC, JVJ INSURANCE MARKETING SERVICES LLC AND MEDIGAP LIFE LLC K - KELLEY AND FERRARO LLP, KENZIE CONSULTING L - LEAD CATALYST, LEGAL HELP SERVICES, LEXINGTON LAW FIRM, LIBERTY DOCUMENT PROCESSING, LIBERTY NATIONAL LIFE INSURANCE COMPANY M - MED ADVANTAGE ADVISORS, MEDHELP, MEDIATOR LAW GROUP, MEDICARE BASICS, MEDICARE BENEFITS REVIEW HOTLINE, MEDICARE FINDER, MEDICARE PLUS CARD, MEDIGAP LIFE LLC, MERCHANT ONE FINANCIAL MORTGAGE, MOMENTUM SOLAR, MONEYSOLVER, MV REALTY PBC, MV MEDICARE ALLY N - NATIONAL DISABILITY, NATIONAL INCOME LIFE INSURANCE COMPANY, NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE, NATIONAL REPUBLICAN SENATORIAL CAMPAIGN COMMITTEE, NATIONALCONSUMERCENTER, NATIONALHOMEPROJECT, NEW STRATA, NEWSTRATA, NEXT STEP EDUCATION CENTER, NUSIGHT O - O2, ONLINE INSURANCE SOLUTIONS P - PAIN RELIEF NETWORK, PARALEGAL ASSISTANCE CENTER, PERFECT TAX RELIEF, PLATINUM CHOICE HEALTHCARE, POLICY SCOUT, POLICYSAVINGS, POLICYSCOUT, PRECISION

11.     In addition to accessing the website form that is requesting PEWC, a consumer must take two definitive actions to effectuate PEWC; (1) click the unchecked checkbox next to the "I Agree" text, which results in the box being "checked" and (2) click the Submit button. Once both actions are taken by a consumer, PEWC is collected and stored in the Fluent Database.

12.     Plaintiff took both definitive actions discussed above; (1) clicked the unchecked checkbox next to the "I Agree" text, which resulted in the checkbox being "checked" and (2) clicked the Submit button. Proof of these actions can be seen in the Visual Playback link provided within the Compliance Report, showing a date and timestamp of Nov. 13, 2021, 11:28:00 GMT +0000 (06:28:00 AM EST).

13.     Further, proof that it was the Plaintiff that submitted PEWC can be confirmed through the "Match Data" tool found within the Visual Playback link. The Match Data tool is utilized to determine if there is a match between the data submitted and anonymized through the one-way hashing algorithm during the Consumer Session and that of the consumer. As can be seen from the screenshot of the Visual Playback, the Plaintiff's phone number is a match, as denoted by the colored checkboxes:

Civil Action No. 3:22-cv-03899-RS          4          DECLARATION OF JEFF RICHARD IN SUPPORT OF MOTION TO DISMISS AM. COMPL. AND CROSS-COMPL.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1

**VISUAL PLAYBACK**

2



3

4

5

6

7

8

9

10

11    I declare under penalty of perjury under the laws of the State of California and the United

12    States of America that the foregoing is true and correct, and that this declaration is executed on

13    October 17, 2022, in Boynton Beach, FL.

      By: _Jeff Richard_____

14                                    Jeff Richard

15                                    Fluent, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

Civil Action No. 3:22-cv-03899-RS          5          DECLARATION OF JEFF RICHARD IN
                                                      SUPPORT OF MOTION TO DISMISS AM.
                                                      COMPL. AND CROSS-COMPL.

# EXHIBIT A

# JORNAYA

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

© All rights reserved. All aspects of the service and information provided by Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya") hereunder - including, e.g., the Jornaya Web site, 3rd Party TCPA Guardian, 1st Party Privacy Guardian, Visual Playback, and the processes used by Jornaya in providing the service - are the exclusive property of Jornaya and its licensors. Jornaya's Visual Playback and the data made available through its use, including but not limited to this document, are subject to confidentiality obligations at all times. By accessing and using the service and information provided hereunder, you represent and warrant that: (a) you have the authority to act on behalf of a valid subscriber to the service, (b) you shall use the service and information in compliance with the terms and conditions on which it is provided, (c) you shall use any data made available through the use of the service for its intended purposes only, and (d) you shall not further distribute any of the service or information provided hereunder to external parties without Jornaya's express prior written approval.

## Guardian TCPA Report

**Prepared for Fluent, LLC**

### What is a lead?

A lead occurs when a consumer visits a website and fills out a form, entering their personal information. A lead can also happen when a consumer interacts with a call center representative and confirms or provides certain information which are documented by the call center. Companies utilize lead forms on their own websites or in their call centers to collect data from consumers who have interest in being contacted about their products and services. Companies also purchase "3rd party data leads", where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites or their call centers, which they then sell to companies as a sales lead: a potential customer who has indicated interest in the company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead.

### Who is Jornaya?

Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

### How does Jornaya help keep companies TCPA Compliant?

As a neutral, 3rd party witness to the events that take place on the website or a call center. Guardian provides facts on what happened during a consumer's visit to the website or interaction with a call center representative. Guardian helps companies to verify:

- Was a TCPA disclosure displayed or provided to the consumer?
- If so, did the disclosure meet the company's visibility and verification requirements? Was it large enough, and with enough color contrast? Or was it hidden and obscured, not meeting the company's requirements? If a call center, was it clearly stated by the call center representative?
- Did the disclosure language match the company's compliance standards?
- Did the consumer consent to the TCPA disclosure that was displayed or provided?

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

| Lead Event Information | |
| --- | --- |
| Universal LeadID | 62832326-D224-36CF-1140-3A301D80EBAE |
| Event Date | 11/13/2021 |
| Event Time | 06:28:00 AM EST |
| IP Address | 174.194.147.237 |
| Location (as indicated by IP address) | Hayward,CA |

| Disclosure Information | |
| --- | --- |
| Query Date | 05/25/2022 |
| Query Time | 12:30:10 PM EDT |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

JORNAYA

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | 1 - 100 INSURE, 1564 VENTURES A - ACCENTLINE, ACCUQUOTE, ACQUISITION TECHNOLOGIES, ADDUCO MEDIA, ALL TORT SOLUTIONS, ALLIED INSURANCE PARTNERS, AMERICAN ACTION NETWORK, AMERICAN ADVISORS GROUP, AMERICAN DISABILITY, AMERICAN DISABILITY HELPLINE, AMERICAN INCOME LIFE INSURANCE COMPANY, AMERICA'S TAX CHOICE, AMERIQUOTE, APOLLO GENETICS, APOLLO HEALTH GROUP, APOLLO PARTNERS, AQUISITION STRATEGIES B - B LEADS LLC, BANKERS HILL INSURANCE, BANKERS LIFE AND CASUALTY COMPANY, BAYLOR GENETICS, BDBPO SOLUTIONS, BIOLOGISTIC LABS, BIOLOGISTICS, BONUSREWARDS, BOOST HEALTH INSURANCE, BOOST MARKETING INC, BRAVER LAW LLC, BRIDGEWATER HEALTH SUPPLIES C - CAC, CALL HUB SOLUTIONS, CALLECTIVE, CASE4DEMAND, CEGE MEDIA, CITIWELLNESS, CITIZENS DISABILITY, CLEAN ENERGY CONCEPTS, CLEARVIEW ENERGY, CLIENT CONSENT, COLLEGE CONNECT, CONSUMER AWARENESS, COVERAGE ONE INSURANCE GROUP, COVERANCE, CREDIT.COM, CREDITREPAIR.COM, CRISP CONNECTIONS D - DEALFINDER, DEALS4U, DEALSTODAY, DEBT.COM, DEBTAID, DEBTEXPERT, DEDICATED MEDICAL PROVIDERS, DEMOCRATIC LEGISLATIVE CAMPAIGN COMMITTEE, DIABETIC DISCOUNT CLUB, DIRECTDEGREES, DISSOLVE DEBT, DVINCI E - EAGENTDIRECT, EARNMORE, EDU FIRST, EDUCATION NETWORK, EFINANCIAL, LLC, EHEALTH, EMPIRE TODAY, LLC, ERUS ENERGY, EXACTCARE, EXACTCARE PHARMACY F - FAMILY HERITAGE LIFE INSURANCE COMPANY, FAMILY HERITAGE LIFE INSURANCE COMPANY OF AMERICA, FDJ, FESTIVE HEALTH, FIDELITY LIFE ASSOCIATION, FINDDREAMJOBS, FLASHREWARDS, FUENTES G - GERBER INSURANCE COMPANY, GERSHFELD LAW GROUP, GLOBE LIFE LIBERTY NATIONAL DIVISION, GOHEALTH, GOMEDIGAP, GREEN CHOICE ENERGY, GREEN STATE ENERGY, GREENLIGHT AUTO PROTECTION, GUIDETOINSURE H - HEALTH CENTER PARTNERS, HEALTH INSURANCE ADVANTAGE, HEALTHMARKETS INSURANCE AGENCY, INC., HEALTHNOW, HEALTHSPIRE, HEALTHY ACCESS, HIGHLAND HEALTH DIRECT, HOMELIGHT, HOMESHIELD I - IDT ENERGY, INDRA ENERGY, INSIDE RESPONSE, INSTANT SAVE, INSTANTPLAYSWEEPSTAKES, INSTINCTIVE EDGE, INSUREALIFE, INTEGRITY VEHICLE SERVICES J - JB PRITZKER FOR GOVERNOR, JOB SPOTTER, JOBSONDEMAND, JOBSPOTTER, JVJ INSURANCE MARKETING SERVICES LLC, JVJ INSURANCE MARKETING SERVICES LLC AND MEDIGAP LIFE LLC K - KELLEY AND FERRARO LLP, KENZIE CONSULTING L - LEAD CATALYST, LEGAL HELP SERVICES, LEXINGTON LAW FIRM, LIBERTY DOCUMENT PROCESSING, LIBERTY NATIONAL LIFE INSURANCE COMPANY M - MED ADVANTAGE ADVISORS, MEDHELP, MEDIATOR LAW GROUP, MEDICARE BASICS, MEDICARE BENEFITS REVIEW HOTLINE, MEDICARE FINDER, MEDICARE PLUS CARD, MEDIGAP LIFE LLC, MERCHANT ONE FINANCIAL MORTGAGE, MOMENTUM SOLAR, MONEYSOLVER, MV REALTY PBC, MY MEDICARE ALLY N - NATIONAL DISABILITY, NATIONAL INCOME LIFE INSURANCE COMPANY, NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE, NATIONAL REPUBLICAN SENATORIAL CAMPAIGN COMMITTEE, NATIONALCONSUMERCENTER, NATIONALHOMEPROJECT, NEW STRATA, NEWSTRATA, NEXT STEP EDUCATION CENTER, NUSIGHT O - O2, ONLINE INSURANCE SOLUTIONS P - PAIN RELIEF NETWORK, PARALEGAL ASSISTANCE CENTER, PERFECT TAX RELIEF, PLATIUNUM CHOICE HEALTHCARE, POLICY SCOUT, POLICYSAVINGS, POLICYSCOUT, PRECISION MARKETING, LLC, PRECISION MEDS, PRESIDIO INTERACTIVE CORPORATION, PRIME MEDICAL SUPPLIES, PROFESSIONAL DEBT SERVICES, PROTECT MY CAR, PUBLIC IQ, PURE DEBT SOLUTIONS Q - QUICKSAVE R - RANDALL REILLY LLC, REALITY DEBT SOLUTIONS, REALITY MEDIA, INC., REPUBLICAN GOVERNOR'S ASSOCIATION, REPUBLICAN NATIONAL COMMITTEE, RESIDENTS ENERGY, RESIDENT'S ENERGY, REWARDS4U, REWARDSFLOW, REWARDVAULT, RFMF, RIDDLE EXPRESS PHARMACY, ROCKETJOBS, RWDALERT, RWDVAULT, RZU S - SABAL INSURANCE SOLUTIONS, SABAL MEDIA GROUP DBA THE MEDICARE BASICS, SALESLOFT, SAMPLES TODAY, SAMPLES4U, SAMPLESANDSAVINGS, SAVETODAY, SEAFRONT MARKETING, SELECTQUOTE, SELECTQUOTE SENIOR, SIGNIFY LABORATORY, SLICKREWARDS, SMART ENERGY, SMART FINAL EXPENSE, SMART MATCH INSURANCE AGENCY, SMARTER DAILY LIVING, SOLAR AMERICA, SOLAR ELIGIBILITY SERVICE, SOLAR XCHANGE, SOLARXCHANGE, SOLID QUOTE, LLC, SOUTHEAST ENERGY CONSULTANT, SR. LIFE, STARTACAREERTODAY, STARTACAREERTODAY.COM, STRATEGIC LITIGATION PARTNERS, STUDENT LOAN & SAVINGS, SUNPRO, SUNPRO SOLAR, SUNRUN, SUNTUITY, SUPERDEALS, SURECOVER GROUP, SURVEYVOICES, SWEEPS4U, SWEEPSTAKES ENTRY CENTER, SWEEPSTAKESADAY, SWEEPSTAKESAMONTH T - TAX DEFENSE NETWORK, TELETRANSFORM, THE FERRARO LAW GROUP, THE HEALTH SCOUT, THE LEGAL CENTER FOR DEBT, THE MITCHELL FIRM, THE SOLAR PROJECT, THECOLLEGEDEGREE, THELEGALHELPERS.COM, THE-SOLAR-PROJECT.COM, THREE MOBILE - HTTP://WWW.THREE.CO.UK/PRIVACY_SAFETY, TIBURON INSURANCE, TOMORROW ENERGY, TOWN SQUARE ENERGY, TRADEMARC GLOBAL, TRINITY SOLAR, TRUALLIANT, TRUSTED CONSUMER U - UK ENERGY TARIFFS, UNITED LAW, UNITED MEDICARE ADVISORS, UNITED STATES DISABILITY, US ENERGY SOLUTIONS, US SOLAR SAVINGS, USAQUOTECENTER.COM, USMEDICAREONLINE.COM V - VALENCE, VANGUARD VEHICLE ARMOR, VIVINT, VIVINT SMART HOME, VIVINT, INC., VODAFONE W - WEIBAIO TRADING INTERNATIONAL LTD, WINNINGTODAY, WINOPOLY, WIRELESSDEALS Y - YMA, YOURLOTTOSERVICE UK LTD - YOURLOTTOSERVICE.CO.UK/PRIVACY |

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | BY CHECKING "I AGREE" AND CLICKING "SUBMIT" I UNDERSTAND THAT I EXPRESSLY CONSENT TO BE CALLED AND/OR RECEIVE TEXT MESSAGES BY OUR MARKETING PARTNERS AT THE LANDLINE OR MOBILE PHONE NUMBER I PROVIDED. I CONFIRM THAT THE NUMBER I PROVIDED IS ACCURATE AND I AM THE REGULAR USER OF THE PHONE AND THAT THE CALL AND/OR TEXT MESSAGE MAY BE MADE USING AN AUTODIALER AND MAY INCLUDE PRERECORDED MESSAGES. I UNDERSTAND MY CONSENT IS NOT REQUIRED TO PERFORM A JOB SEARCH, OR TO PURCHASE OR USE ANY GOODS OR SERVICES OFFERED. FOR SMS MESSAGE CAMPAIGNS: TEXT STOP TO STOP AND HELP FOR HELP. MSG & DATA RATES MAY APPLY. PERIODIC MESSAGES; MAX. 30/MONTH. |
| Labeled TCPA Disclosure Statement captured at the lead event: | I AGREE |

**Visual Playback Link:**

https://vp.leadid.com/playback/62832326-D224-36CF-1140-3A301D80EBAE/1653496210.0761?key=1636802880703

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

# EXHIBIT D

1  JOSHUA K. HAEVERNICK (SBN 308380)
   joshua.haevernick@dentons.com
2  DENTONS US LLP
   1999 Harrison Street, Suite 1300
3  Oakland, CA 94612
4  Telephone:    415 882-5000
   Facsimile:    415 882-0300
5

6  JORDAN CAMERON (*Pro Hac Vice*)
   Jordan.cameron@dentons.com
7  DENTONS DURHAM JONES PINEGAR
   3301 N. Thanksgiving Way, Suite 400
8  Lehi, UT 84093
   Telephone:   801-375-6600
9

10 ATTORNEYS FOR THIRD-PARTY
   DEFENDANT POLICYSCOUT, LLC

11

12                  UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14

15

| | |
|---|---|
| TERRI LEE NICHOLS, individually and on behalf of all those similarly situated | Civil Action No. 3:22-cv-03899-RS |
| Plaintiff, | Unlimited Jurisdiction |
| vs. | **SECOND DECLARATION OF CODY WILLIAMS IN SUPPORT OF POLICYSCOUT LLC'S MOTION TO DISMISS AMENDED COMPLAINT AND CROSS-COMPLAINT** |
| 360 INSURANCE GROUP LLC, POLICYSCOUT, LLC, | |
| Defendants. | |
| 360 INSURANCE GROUP LLC | Hearing Date: Dec. 1, 2022 |
| Third-Party Plaintiff, | Time: 1:30 pm |
| vs. | |
| POLICYSCOUT LLC and MOES 1 to 10 | |
| Third-Party Defendants. | |

16
17
18
19
20
21
22
23
24
25
26
27
28

Civil Action No. 3:22-cv-03899-RS                    SECOND DECLARATION OF CODY WILLIAMS
                                                     IN SUPPORT OF MOTION TO DISMISS AM.
                                                     COMPL. AND CROSS-COMPL.

1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882-5000

1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

1    I, Cody Williams, declare as follows:

2    1.    I am a manager of Guidetoinsure, LLC dba Insuralife ("Insuralife"). I am

3  competent to testify to the matters set forth in this declaration and, if called to do so, I would and

4  could so testify. I submit this declaration in support of PolicyScout's *Motion to Dismiss*

5  *Plaintiff's Amended Complaint and Cross-Claimant's Cross-Complaint.*

6    2.    Other dbas of GuidetoInsure included PolicyScout Insurance. Insuralife employees

7  were assigned email addresses @policyscout.com.

8    3.    Insuralife was registered as a business on September 3, 2015.

9    4.    I understand that Insuralife was originally owned and organized by Scott Cate and

10  Mark Siu.

11    5.    Insuralife's original address was 6415 S 3000 E #210, Salt Lake City, UT 84121.

12    6.    Throughout its business, Insuralife has always filed annual registrations with the

13  state of Utah, has always properly prepared taxes, and has always maintained its insurance

14  licenses.

15    7.    Insuralife is not, and has never been, registered to do business in California.

16    8.    Insuralife does not have, and has never had, any offices, property, assets, telephone

17  listings, or bank accounts in California.

18    9.    Insuralife has never paid taxes in California.

19    10.    Currently, Insuralife has around 30 employees on its payroll. None are located in

20  California.

21    11.    Insuralife does not actively recruit employees in California.

22    12.    Insuralife does not have, and has never had, any managers or officers in California.

23    13.    To the extent Insuralife does any advertising, which is minimal, all of its

24  advertising is national and does not target any particular State.

25    14.    Insuralife does not have, and has never had, any insurance agents in California.

26    15.    Insuralife has never targeted or directed advertising at California.

27    16.    Insuralife has never engaged in any marketing campaign specifically directed at

28  California or to residents of California.

Civil Action No. 3:22-cv-03899-RS            1            SECOND DECLARATION OF CODY WILLIAMS
                                                          IN SUPPORT OF MOTION TO DISMISS AM.
                                                          COMPL. AND CROSS-COMPL.

1    17.    Insuralife has never hired any marketing affiliates or brand promoters in California

2    or elsewhere, to promote Insuralife in California specifically. Similarly, Insuralife does not rely

3    on any third party marketers or affiliates in California.

4    18.    In 2021, PolicyScout LLC acquired the equity interest in Insuralife. It also

5    acquired the policyscout.com domain and the PolicyScout trademark.

6    19.    With the exception of a change of office location, after the acquisition, Insuralife's

7    operations were left undisturbed.

8    20.    PolicyScout LLC and Insuralife have operated as separate businesses at all times.

9    They have distinct operations and distinct functions. Insuralife is an insurance agency.

10   PolicyScout LLC is not.

11   21.    The companies prepare separate taxes and have separate EIN numbers.

12   22.    Insuralife's EIN is 47-1324797.

13   23.    I am, and have always been, an employee of Insuralife.

14   24.    Attached as Exhibit 1 is a true and correct copy of my W-2 with sensitive

15   information redacted.

16   25.    My LinkedIn states that I am Director of Sales of PolicyScout. This is reference to

17   the dba of GuidetoInsure, not PolicyScout LLC.

18   26.    Samantha Dean, who has the email address sdean@policyscout.com has also

19   always been an employee of Insuralife. Attached as Exhibit 2 is a true and correct copy of her W-

20   2 with sensitive information redacted.

21   27.    Ms. Dean and I manage the day to day affairs of Insuralife with no oversight or

22   direction from PolicyScout LLC.

23   28.    As an insurance agency, Insuralife qualifies consumers for insurance prior to

24   transferring them to closing agents.

25   29.    Sometimes Insuralife uses its own closing agents, and sometimes it will send a

26   consumer to a third party, depending on the consumer needs.

27

28

Civil Action No. 3:22-cv-03899-RS           2           SECOND DECLARATION OF CODY WILLIAMS
                                                         IN SUPPORT OF MOTION TO DISMISS AM.
                                                         COMPL. AND CROSS-COMPL.

1    30.    Sometimes Insuralife will receive consumer leads from PolicyScout LLC.

2    However, what Insuralife does with those leads is entirely in its discretion. PolicyScout has no

3    oversight or control over this.

4    31.    I have reviewed the Declaration of Nichols filed in this case and find it to be

5    deficient.

6    32.    The lead records for Nichols show that a mobile device was used to submit

7    Nichols' name, phone number, and confirm her consent to be called.

8    33.    The IP address (i.e., associated with the Nichols' lead is a mobile IP provided by

9    Verizon. Mobile IP addresses are dynamic, meaning they change.

10    34.    Due to the dynamic nature of cellular IP addresses, we do not rely on it for

11    determining the location of the potential customer.

12    35.    Nichols stated IP address of 98.207.xx.xxx is provided by Comcast. This indicates

13    that it is the IP address of a computer, not a mobile device.

14    36.    Exhibit 3 is a true and correct copy of the IP details for 98.207.xx.xxx.

15    37.    Nichols' Declaration makes no mention of her mobile device or mobile search

16    history. But, the Nichols lead came from a mobile device, the phone number provided being

17    Nichols'.

18    38.    Importantly, the phone number includes the area code 757, which is an area code

19    for Virginia, not California.

20    39.    Unless a consumer submits a consent form, Insuralife will never become aware of,

21    or possess, the name or phone number of the consumer.

22    40.    Insuralife properly relied on the verified consent which identified Insuralife, and

23    through which Insuralife received Nichols' name and phone number.

24    41.    Insuralife contacted Nichols on its own and was not directed by PolicyScout LLC

25    to place any call to or otherwise contact Nichols.

26    42.    On May 12, 2022, in reliance on Nichols' express consent, Insuralife placed a

27    single phone call to Nichols. Nichols did not answer the phone, so Insuralife left a voicemail.

28

19951 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882 5000

Civil Action No. 3:22-cv-03899-RS          3          SECOND DECLARATION OF CODY WILLIAMS
IN SUPPORT OF MOTION TO DISMISS AM.
COMPL. AND CROSS-COMPL.

1        43.    I have listened to the recording of the voicemail. It states, "Hi there. I'm just

2  following-up on your additional Medicare coverage quote from Insuralife. I have your file open

3  and it looks like you inquired a while ago, so I just wanted to follow-up. Give me a call back as

4  soon as you can at 1-888-476-0869. I just wanted to set up a quick call to make sure you get the

5  best rate. As I'm looking at your file, there's a lot of different options we can go over, and we can

6  make it easy to understand what the best option is for you. So anyways, give me call back as soon

7  as you can since I have your file open for additional Medicare coverage quote. And again, I'm

8  calling from Insuralife, and our number is 1-888-476-0869, and I look forward to hearing from

9  you. Bye-bye."

10       44.    A true and correct copy of the voicemail, Exhibit 4, will be lodged with the court

11  concurrently herewith.

12       45.    The voicemail was left by Insuralife on Insuralife's own behalf. It does not

13  mention 360 Insurance and was not left for 360 Insurance's behalf.

14       46.    Insuralife initiated no additional communication to Nichols.

15      I declare under penalty of perjury under the laws of the State of California and the United

16  States of America that the foregoing is true and correct, and that this declaration is executed on

17  November 4, 2022, in South Jordan, Utah.

By: _____

Cody Williams

GuidetoInsure, LLC

# EXHIBIT 1

**2022 W-2 and EARNINGS SUMMARY** 

| W-2 | Employee Reference Copy Wage and Tax Statement | 2022 |
| --- | --- | --- |

Copy C for employee's records. OMB No. 1545-0008

| d Control number | Dept. | Corp. | Employer use only |
| --- | --- | --- | --- |
| 000342 LOSA/7UF | 900000 | A | 34 |

c Employer's name, address, and ZIP code

GUIDETOINSURE   LLC
10808   S RIVER   FRONT   PKWY
SOUTH   JORDAN   UT 84095-5761

Batch   #02922

e/f Employee's name, address, and ZIP code

CODY   WILLIAMS

| b Employer's FED ID number | a Employee's SSA number |
| --- | --- |
| 47-1324797 | XXX-XX-2719 |
| 1 Wages, tips, other comp. | 2 Federal Income tax withheld |
| 3 Social security wages | 4 Social security tax withheld |
| 5 Medicare wages and tips | 6 Medicare tax withheld |
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See Instructions for box 12 |
| 14 Other | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp Ret. plan 3rd party sick pay |

| 15 State | Employer's state ID no. | 16 State wages, tips, etc. |
| --- | --- | --- |
| UT | 13944359003WTH | |
| 17 State Income tax | | 18 Local wages, tips, etc. |
| 19 Local Income tax | | 20 Locality name |

This blue section is your Earnings Summary which provides more detailed information on the generation of your W-2 statement. The reverse side includes instructions and other general information.

1. Your Gross Pay was adjusted as follows to produce your W-2 Statement. 

| | Wages, Tips, other Compensation Box 1 of W-2 | Social Security Wages Box 3 of W-2 | Medicare Wages Box 5 of W-2 | UT. State Wages, Tips, Etc. Box 16 of W-2 |
| --- | --- | --- | --- | --- |
| Gross Pay | | | | |
| Reported W-2 Wages | | | | |



2. Employee   Name and Address.


CODY   WILLIAMS

© 2022  ADP, Inc.

---

| 1 Wages, tips, other comp. | 2 Federal Income tax withheld |
| --- | --- |
| 3 Social security wages | 4 Social security tax withheld |
| 5 Medicare wages and tips | 6 Medicare tax withheld |

| d Control number | Dept. | Corp. | Employer use only |
| --- | --- | --- | --- |
| 000342 LOSA/7UF | 900000 | A | 34 |

c Employer's name, address, and ZIP code

GUIDETOINSURE   LLC
10808   S RIVER   FRONT   PKWY
SOUTH   JORDAN   UT 84095-5761

| b Employer's FED ID number | a Employee's SSA number |
| --- | --- |
| 47-1324797 | XXX-XX-2719 |
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See Instructions for box 12 |
| 14 Other | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp Ret. plan 3rd party sick pay |

e/f Employee's name, address, and ZIP code

CODY   WILLIAMS

| 15 State | Employer's state ID no. | 16 State wages, tips, etc. |
| --- | --- | --- |
| UT | 13944359003WTH | |
| 17 State income tax | | 18 Local wages, tips, etc. |
| 19 Local income tax | | 20 Locality name |

| W-2 | Federal Filing Copy Wage and Tax Statement | 2022 |
| --- | --- | --- |

Copy B to be filed with employee's Federal Income Tax Return. OMB No. 1545-0008

---

| 1 Wages, tips, other comp. | 2 Federal Income tax withheld |
| --- | --- |
| 3 Social security wages | 4 Social security tax withheld |
| 5 Medicare wages and tips | 6 Medicare tax withheld |

| d Control number | Dept. | Corp. | Employer use only |
| --- | --- | --- | --- |
| 000342 LOSA/7UF | 900000 | A | 34 |

c Employer's name, address, and ZIP code

GUIDETOINSURE   LLC
10808   S RIVER   FRONT   PKWY
SOUTH   JORDAN   UT 84095-5761

| b Employer's FED ID number | a Employee's SSA number |
| --- | --- |
| 47-1324797 | XXX-XX-2719 |
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a |
| 14 Other | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp Ret. plan 3rd party sick pay |

e/f Employee's name, address, and ZIP code

CODY   WILLIAMS

| 15 State | Employer's state ID no. | 16 State wages, tips, etc. |
| --- | --- | --- |
| UT | 13944359003WTH | |
| 17 State income tax | | 18 Local wages, tips, etc. |
| 19 Local income tax | | 20 Locality name |

| W-2 | UT.State Reference Copy Wage and Tax Statement | 2022 |
| --- | --- | --- |

Copy 2 to be filed with employee's State Income Tax Return. OMB No. 1545-0008

---

| 1 Wages, tips, other comp. | 2 Federal Income tax withheld |
| --- | --- |
| 3 Social security wages | 4 Social security tax withheld |
| 5 Medicare wages and tips | 6 Medicare tax withheld |

| d Control number | Dept. | Corp. | Employer use only |
| --- | --- | --- | --- |
| 000342 LOSA/7UF | 900000 | A | 34 |

c Employer's name, address, and ZIP code

GUIDETOINSURE   LLC
10808   S RIVER   FRONT   PKWY
SOUTH   JORDAN   UT 84095-5761

| b Employer's FED ID number | a Employee's SSA number |
| --- | --- |
| 47-1324797 | XXX-XX-2719 |
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a |
| 14 Other | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp Ret. plan 3rd party sick pay |

e/f Employee's name, address, and ZIP code

CODY   WILLIAMS

| 15 State | Employer's state ID no. | 16 State wages, tips, etc. |
| --- | --- | --- |
| UT | 13944359003WTH | |
| 17 State income tax | | 18 Local wages, tips, etc. |
| 19 Local income tax | | 20 Locality name |

| W-2 | UT.State Filing Copy Wage and Tax Statement | 2022 |
| --- | --- | --- |

Copy 2 to be filed with employee's State Income Tax Return. OMB No. 1545-0008

# EXHIBIT 2

## 2022 W-2 and EARNINGS SUMMARY

 ADP

| | |
|---|---|
| **Employee Reference Copy**<br>**W-2** Wage and Tax **2022**<br>Statement OMB No. 1545-0008<br>Copy C for employee's records. | This blue section is your Earnings Summary which provides more detailed information on the generation of your W-2 statement. The reverse side includes instructions and other general information. |

**d Control number** | **Dept.** | **Corp.** | **Employer use only**
000209 LOSA/7UF 900000 | | A | 8

**c Employer's name, address, and ZIP code**
GUIDETOINSURE    LLC
10808  S RIVER  FRONT  PKWY
SOUTH  JORDAN  UT 84095-5761

Batch  #02922

**e/f Employee's name, address, and ZIP code**
SAMANTHA   D DEAN

1. Your Gross Pay was adjusted as follows to produce your W-2 Statement.

| | Wages, Tips, other Compensation Box 1 of W-2 | Social Security Wages Box 3 of W-2 | Medicare Wages Box 5 of W-2 | UT. State Wages, Tips, Etc. Box 16 of W-2 |
|---|---|---|---|---|
| Gross Pay | | | | |
| Reported W-2 Wages | ▮ | ▮ | ▮ | ▮ |

**b Employer's FED ID number** | **a Employee's SSA number**
47-1324797 | XXX-XX-7318

| 1 Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|
| 3 Social security wages | 4 Social security tax withheld |
| 5 Medicare wages and tips | 6 Medicare tax withheld |
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12 |
| 14 Other | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp Ret. plan 3rd party sick pay |

**15 State** | **Employer's state ID no.** | **16 State wages, tips, etc.**
UT | 13944359003WTH |

**17 State income tax** | **18 Local wages, tips, etc.**

**19 Local income tax** | **20 Locality name**

2. Employee Name and Address.

SAMANTHA   D DEAN

© 2022 ADP, Inc.

---

| 1 Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|
| 3 Social security wages | 4 Social security tax withheld |
| 5 Medicare wages and tips | 6 Medicare tax withheld |

**d Control number** | **Dept.** | **Corp.** | **Employer use only**
000209 LOSA/7UF 900000 | | A | 8

**c Employer's name, address, and ZIP code**
GUIDETOINSURE    LLC
10808  S RIVER  FRONT  PKWY
SOUTH  JORDAN  UT 84095-5761

**b Employer's FED ID number** | **a Employee's SSA number**
47-1324797 | XXX-XX-7318

| 7 Social security tips | 8 Allocated tips |
|---|---|
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12 |
| 14 Other | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp Ret. plan 3rd party sick pay |

**e/f Employee's name, address, and ZIP code**
SAMANTHA   D DEAN

**15 State** | **Employer's state ID no.** | **16 State wages, tips, etc.**
UT | 13944359003WTH |

**17 State income tax** | **18 Local wages, tips, etc.**

**19 Local income tax** | **20 Locality name**

Federal  Filing  Copy
**W-2** Wage and Tax **2022**
Statement OMB No. 1545-0008
Copy B to be filed with employee's Federal Income Tax Return.

---

| 1 Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|
| 3 Social security wages | 4 Social security tax withheld |
| 5 Medicare wages and tips | 6 Medicare tax withheld |

**d Control number** | **Dept.** | **Corp.** | **Employer use only**
000209 LOSA/7UF 900000 | | A | 8

**c Employer's name, address, and ZIP code**
GUIDETOINSURE    LLC
10808  S RIVER  FRONT  PKWY
SOUTH  JORDAN  UT 84095-5761

**b Employer's FED ID number** | **a Employee's SSA number**
47-1324797 | XXX-XX-7318

| 7 Social security tips | 8 Allocated tips |
|---|---|
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a |
| 14 Other | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp Ret. plan 3rd party sick pay |

**e/f Employee's name, address, and ZIP code**
SAMANTHA   D DEAN

**15 State** | **Employer's state ID no.** | **16 State wages, tips, etc.**
UT | 13944359003WTH |

**17 State income tax** | **18 Local wages, tips, etc.**

**19 Local income tax** | **20 Locality name**

UT.State  Reference  Copy
**W-2** Wage and Tax **2022**
Statement OMB No. 1545-0008
Copy 2 to be filed with employee's State Income Tax  Return.

---

| 1 Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|
| 3 Social security wages | 4 Social security tax withheld |
| 5 Medicare wages and tips | 6 Medicare tax withheld |

**d Control number** | **Dept.** | **Corp.** | **Employer use only**
000209 LOSA/7UF 900000 | | A | 8

**c Employer's name, address, and ZIP code**
GUIDETOINSURE    LLC
10808  S RIVER  FRONT  PKWY
SOUTH  JORDAN  UT 84095-5761

**b Employer's FED ID number** | **a Employee's SSA number**
47-1324797 | XXX-XX-7318

| 7 Social security tips | 8 Allocated tips |
|---|---|
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a |
| 14 Other | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp Ret. plan 3rd party sick pay |

**e/f Employee's name, address, and ZIP code**
SAMANTHA   D DEAN

**15 State** | **Employer's state ID no.** | **16 State wages, tips, etc.**
UT | 13944359003WTH |

**17 State income tax** | **18 Local wages, tips, etc.**

**19 Local income tax** | **20 Locality name**

UT.State  Filing  Copy
**W-2** Wage and Tax **2022**
Statement OMB No. 1545-0008
Copy 2 to be filed with employee's State Income Tax  Return.

# EXHIBIT 3

IP Details For: 98.207.0.0

| | |
|---|---|
| Decimal: | 1657733120 |
| Hostname: | c-98-207-0-0.hsd1.ca.comcast.net |
| ASN: | 7922 |
| ISP: | Comcast Cable Communications LLC |
| Services: | None detected |
| Assignment: | Likely Dynamic IP |
| Country: | United States |
| State/Region: | California |
| City: | San Francisco |



Leaflet | © OpenStreetMap Terms

| | |
|---|---|
| Latitude: | 37.774929  (37° 46′ 29.74″ N) |
| Longitude: | -122.419418  (122° 25′ 9.90″ W) |

CLICK TO CHECK BLACKLIST STATUS

Latitude and Longitude are often near the center of population. These values are not precise enough to be used to identify a specific address or for legal purposes. Geolocation data from IP2Location.

# EXHIBIT 4

## PLEASE SEE MANUAL FILING
## NOTICE ATTACHED HERETO

1   JOSHUA K. HAEVERNICK (SBN 308380)
    joshua.haevernick@dentons.com
2   DENTONS US LLP
3   1999 Harrison Street, Suite 1300
    Oakland, CA 94612
4   Telephone:      415 882-5000
    Facsimile:      415 882-0300
5
6   JORDAN CAMERON (Pro Hac Vice)
    Jordan.cameron@dentons.com
7   DENTONS DURHAM JONES PINEGAR
    3301 N. Thanksgiving Way, Suite 400
8   Lehi, UT 84093
    Telephone:      801-375-6600
9
10  Attorneys For Defendant And Cross-Defendant
    POLICYSCOUT, LLC
11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14

15  TERRI LEE NICHOLS, individually and on       Civil Action No. 3:22-cv-03899-RS
    behalf of all those similarly situated
16
17              Plaintiff,
                                                 **WILLIAMS DECLARATION EXHIBIT 4:**
18          vs.                                  **MAY 12, 2022 VOICEMAIL TO**
                                                 **PLAINTIFF NICHOLS**
19  360 INSURANCE GROUP LLC,
    POLICYSCOUT, LLC                             **MANUAL FILING NOTIFICATION**
20
                Defendants.
21
                                                 Date:        Dec. 1, 2022
22  360 INSURANCE GROUP, LLC                     Time:        1:30 pm
                                                 Courtroom:   3, 17th Floor
23              Cross-Complainant,                            Hon. Richard Seeborg
24          vs.
25  POLICYSCOUT, LLC and MOES 1 to 10
26              Cross-Defendant.
27
28

    Civil Action No. 3:22-cv-03899-RS
    US_ACTIVE\122643290\V-1

1      Regarding:      EXHIBIT 4 to the DECLARATION OF CODY

2                    WILLIAMS.

3      This filing was not efiled as it is a recording on external media, and is being maintained

4 in the case file in the Clerk's office.

5      If you are a participant on this case, this filing will be served in hard copy via Federal

6 Express on a CD Disk.

7      For information on retrieving this filing directly from the Court, please see the Court's

8 main web site at http://www.cand.uscourts.gov under "Frequently Asked Questions (FAQ)."

9

10      Dated: November 7, 2022              DENTONS US LLP

11                                   By: _____ */s/ Joshua Haevernick* _____
                                             JOSHUA HAEVERNICK

12

13                                   Attorneys For Defendant And Cross-Defendant
                                  POLICYSCOUT, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CALIFORNIA 94612
415 882-5000

Civil Action No. 3:22-cv-03899-RS        1        DEFENDANT POLICYSCOUT'S REPLY MEMO.
RE MOTION TO DISMISS AM. COMPL. AND
CROSS-COMPL.

US_ACTIVE\122643290\V-1

# EXHIBIT E

1

2

3

4

5

6

7                              UNITED STATES DISTRICT COURT

8                              NORTHERN DISTRICT OF CALIFORNIA

9

10   TERRI LEE NICHOLS,                          Case No. 22-cv-03899-RS

         Plaintiff,

11

12       v.                                      **ORDER GRANTING MOTION TO
                                                 DISMISS**
13   360 INSURANCE GROUP LLC, et al.,

14       Defendants.

15   360 INSURANCE GROUP, LLC

16       Cross-Claim Plaintiff,

17       v.

18   POLICYSCOUT, LLC and MOES 1 to 10,

19       Cross-Claim Defendant.

20

21                                   **I. INTRODUCTION**

22       Defendant and Cross-Defendant PolicyScout, LLC moves to dismiss both Plaintiff's

23   Amended Complaint and 360 Insurance Group LLC's Cross-Complaint. For the reasons

24   articulated below, the motion to dismiss is granted for lack of personal jurisdiction, with leave to

25   amend.

26

27

28

United States District Court
Northern District of California

1

## II. BACKGROUND[1]

2    Plaintiff Terri Lee Nichols ("Nichols"), a resident of San Jose, California, alleges that she

3    received a pre-recorded telemarketing call, which was left as a voicemail. Upon returning the call

4    on May 12, 2022[2], Nichols spoke to a representative from Defendant and Cross-Claim Plaintiff

5    360 Insurance Group LLC ("360 Insurance"), a Missouri limited liability company. The

6    representative identified herself as promoting Medicare products as part of her employment with

7    360 Insurance. Because Nichols did not consent to this or any communication from 360 Insurance,

8    she seeks to sue 360 Insurance on behalf of herself and a class of similarly situated individuals for

9    violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

10    After the instant suit was filed, 360 Insurance filed a third party complaint against

11    Defendant and Cross-Claim Defendant PolicyScout LLC ("PolicyScout"), a Delaware limited

12    liability company headquartered in Utah. 360 Insurance had entered into an Insurance Lead

13    Purchase Agreement ("Agreement") to purchase lead data from PolicyScout, and as a result,

14    alleged that it was actually PolicyScout that made the calls to Plaintiff. Accordingly, 360

15    Insurance sought indemnification from PolicyScout pursuant to the Agreement, and Nichols added

16    PolicyScout as a party to its complaint.

17

## III. LEGAL STANDARDS

18    PolicyScout brings the instant motion to dismiss, alleging a lack of standing, lack of

19    personal jurisdiction and a failure to state a claim. PolicyScout also argues dismissal is warranted

20    pursuant to the forum selection clause in the Agreement, which provides that suits concerning the

21    Agreement shall be brought in the state of Utah.[3]

22

23    [1] The factual background is based on the well-pled allegations in the complaints, which we take as true for the purposes of this motion.

24    [2] The Amended Complaint actually says "including a call on May 12, 2022," Dkt. 31 at 4,

25    suggesting that there were multiple calls, but no other details are provided and no other instances are alleged. Based on the Third Party Complaint filed by 360 Insurance, however, we assume four calls were made: on April 26, May 2, May 6, and May 12, 2022.

26    [3] It is a little unclear under which rules PolicyScout moves. In its Notice of Motion, PolicyScout

27    asserts its motion to dismiss is made under Fed. R. Civ. Pro. 12(b)(1) and 12(b)(2), whereas in its actual motion to dismiss, PolicyScout asserts the motion is made under Federal Rules of Civil

28

United States District Court
Northern District of California

1          On a motion to dismiss for lack of subject matter jurisdiction under Federal Rules of Civil

2   Procedure 12(b)(1), the plaintiff must prove jurisdiction in order to survive the motion. *Stock*

3   *West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). "When considering a

4   motion to dismiss pursuant to Rule 12(b)(1), the district court is not restricted to the pleadings, but

5   may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning

6   the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1998).

7          Motions to dismiss for lack of personal jurisdiction are authorized by Rule 12(b)(2) of the

8   Federal Rules of Civil Procedure. Personal jurisdiction over a nonresident defendant may exist if

9   the defendant has either a continuous and systematic presence in the state (general jurisdiction), or

10   minimum contacts with the forum state such that the exercise of jurisdiction "does not offend

11   traditional notions of fair play and justice" (specific jurisdiction). *Int'l Shoe Co. v. Washington*,

12   326 U.S. 310, 316 (1946) (internal quotation marks and citations omitted). Fairness requires that a

13   court exercise jurisdiction only if the defendant's actions in connection with the forum are such

14   that "he should reasonably anticipate being haled into court there." *World Wide Volkswagen Corp.*

15   *v. Woodson*, 444 U.S. 286, 297 (1980).

16         Where there is no federal statute applicable to determine personal jurisdiction, a district

17   court should apply the law of the state where the court sits. *See Schwarzenegger v. Fred Martin*

18   *Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California's long-arm statute permits the "exercise

19   of jurisdiction on any basis not inconsistent with the Constitution of this state or of the United

20   States." Cal. Civ. P. Code § 410.10.

21         If personal jurisdiction is challenged, the plaintiff bears the burden of establishing the

22   district court's personal jurisdiction over the defendant. *See Doe v. Unocal Corp.*, 248 F.3d 915,

23   922 (9th Cir. 2001). However, the plaintiff need only make a prima facie showing of jurisdiction

24   to defeat the motion to dismiss. *See id.*; *see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557

Procedure 12(b)(1) and 12(b)(6). PolicyScout reiterates in its Reply that its Motion is made under 12(b)(1) and 12(b)(6), but also includes a footnote appending 12(b)(3) as a basis "to the extent applicable." Dkt 39 at 1 n.1. We construe its pleadings as asserting all four bases, albeit with the expectation that PolicyScout will be clearer and more consistent in future submissions.

ORDER GRANTING MOTION TO DISMISS
CASE NO. 22-cv-03899-RS

3

1  F.2d 1280, 1285 (9th Cir. 1977). Such a showing requires only that a plaintiff present facts which,

2  if true, establish jurisdiction. *See Unocal*, 248 F.3d at 922. "[U]ncontroverted allegations in

3  [plaintiff's] complaint must be taken as true," and "conflicts between the facts contained in the

4  parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima

5  facie case for personal jurisdiction exists." *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586,

6  588 (9th Cir. 1996).

7      A motion to dismiss based on a forum-selection clause is governed by Federal Rule of

8  Civil Procedure 12(b)(3), which allows a case to be dismissed for improper venue. *Argueta v.*

9  *Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). When considering a forum-selection

10  clause under a Rule 12(b)(3) motion, the Court need not accept pleadings as true and may consider

11  facts outside the pleadings, but the Court must draw all reasonable inferences and resolve all

12  factual conflicts in favor of the non-moving party. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133,

13  1137–38 (9th Cir. 2003). A district court shall dismiss or transfer a case "laying venue in the

14  wrong division or district." *Rodriguez v. PepsiCo Long Term Disability Plan*, 716 F.Supp.2d 855,

15  857 (N.D. Cal. 2010) (citing 28 U.S.C. § 1406(a)).

16      A Rule 12(b)(6) motion to dismiss tests the sufficiency of a statement of claim for relief. A

17  complaint must contain "a short and plain statement of the claim showing that the pleader is

18  entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a

19  complaint must have sufficient factual allegations to state a claim that is "plausible on its face."

20  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 570

21  (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the

22  court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

23  (citing *Twombly*, 550 U.S. at 556). This standard asks for "more than a sheer possibility that a

24  defendant has acted unlawfully." *Id.* The determination is a context-specific task requiring the

25  court "to draw on its judicial experience and common sense." *Id.* at 679.

26      Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal

27  theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *See*

28                                                    ORDER GRANTING MOTION TO DISMISS
                                                    CASE NO. 22-cv-03899-RS

4

United States District Court
Northern District of California

1    *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and

2    citation omitted). When evaluating such a motion, the court must accept all material allegations in

3    the complaint as true and construe them in the light most favorable to the non-moving party. *In re*

4    *Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). It must also "draw all

5    reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d

6    556, 561 (9th Cir. 1987).

7                                              **IV. DISCUSSION**

8        **A.  Personal Jurisdiction**

9        As a Delaware limited liability company with Utah as its principal place of business,

10   PolicyScout avers that it has no connection to California: it has not been registered to do business

11   in the state; it does not have, and has never had, property or offices in California; it has never paid

12   taxes in California; it has never employed people in California, nor does it actively recruit

13   employees in California; and it has never targeted or directed advertising or marketing campaigns

14   at California or its residents. Instead, the company maintains websites accessible nationally,

15   through which consumers may request further communication regarding insurance services and

16   offerings. PolicyScout argues, and Nichols and 360 Insurance do not contest, that the Court lacks

17   general jurisdiction over PolicyScout. The only question remaining, therefore, is whether specific

18   personal jurisdiction is similarly lacking.

19       The Ninth Circuit analyzes specific personal jurisdiction under a three-prong test: "(1) The

20   non-resident defendant must purposefully direct his activities or consummate some transaction

21   with the forum or resident thereof; or perform some act by which he purposefully avails himself of

22   the privilege of conducting activities in the forum, thereby invoking the benefits and protections of

23   its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related

24   activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice,

25   i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. Because TCPA claims sound in tort,

26   the first prong is more appropriately evaluated using a purposeful direction analysis, *id.*, which in

27   turn is evaluated by a three-part "effects" test, traceable to *Calder v. Jones*, 465 U.S. 783 (1984):

28                                                          ORDER GRANTING MOTION TO DISMISS
                                                            CASE NO. 22-cv-03899-RS

                                                      5

*Left margin (vertical):* United States District Court  Northern District of California

the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803 (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

### i. First *Calder* Effect: Intentional Act

PolicyScout contests that it engaged in an express act aimed at the forum state that it knew would likely cause harm in California. PolicyScout first argues that the alleged controversy does not involve any action from PolicyScout itself, because it neither placed the call nor left the voicemail. As corroboration, PolicyScout points to its practice of engaging in outbound communications only if the consumer has first initiated contact—in fact, it claims that it "does not have the ability to randomly generate numbers or automatically dial sequential numbers," but instead "relies exclusively on consumers providing their own information." Dkt. 36 at 4. On this basis, PolicyScout includes a Declaration of Jeff Richard, explaining that Plaintiff agreed to provide prior express written consent to being contacted on the website FindDreamJobs.com on November 13, 2021, through a form that required her to click a checkbox next to "I Agree" and then click a Submit button. PolicyScout proffers a report with various data about the website visit, including the IP address that was used. This account drastically contrasts with that provided by Nichols, who alleges both in her complaint and in a declaration attached to her opposition that she never provided consent to be contacted. She claims she never visited the website FindDreamJobs.com, and was never associated with the IP address that PolicyScout identified in its report as belonging to Plaintiff.

PolicyScout objects to the Declaration of Terri Lee Nichols, claiming that it is materially incomplete, self-serving, and lacks detailed facts and supporting evidence, and urges disregarding it in its entirety.[4] The cases on which PolicyScout relies for this argument, however, are distinguishable. *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015)

---

[4] PolicyScout also objects, on similar grounds, to one paragraph in the Declaration of Bradley Aden.

United States District Court
Northern District of California

1    and *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054 (9th Cir. 2002), for instance, both

2    considered the Parties' evidence in the context of summary judgment, where they had had the

3    opportunity and time to develop the record. It is in that context that "the district court can

4    disregard a self-serving declaration that states only conclusions and not facts," *Nigro*, 784 F.3d at

5    497. (Notably, the *Nigro* court found that the declaration and deposition, "albeit uncorroborated

6    and self-serving, were sufficient"—and that the district court had actually erred in disregarding

7    them and in granting summary judgment. *Id.*) Here, discovery has yet to be undertaken, and the

8    fundamental question before the court is not about whether there is sufficient evidence to show

9    that one side must prevail as a matter of law with respect to one or more issues, but whether the

10   Plaintiff's claims are plausible in light of the factual allegations in the Complaint. Neither of the

11   declarations are so self-serving or devoid of factual corroboration so as to warrant discrediting

12   them at this early stage. For the purposes of this 12(b)(2) motion to dismiss, therefore, the

13   conflicting factual accounts regarding what Plaintiff Nichols did or did not do are resolved in

14   favor of Nichols.[5]

15       PolicyScout also tries to contest an intentional act by arguing that the voicemail Nichols

16   received identifies only Insuralife, not PolicyScout, as the company that called, and claims that

17   Insuralife, a legally separate entity from PolicyScout, left the voicemail "on Insuralife's own

18   behalf." Dkt. 39-2 at 4. This is similarly deficient as a basis to dismiss. First, it again counters the

19   allegations presented in the complaints. Nichols explains that, upon returning the call, she spoke to

20   someone from 360 Insurance—not Insuralife. 360 Insurance, for its part, explains that it has no

21   relationship with Insuralife: "360 Insurance contracted with PolicyScout, not Insuralife," and 360

22   Insurance "never even knew of Insurealife's [*sic*] existence before reading the allegations in

23   PolicyScout's motion to dismiss." Dkt. 37 at 5. It is from these facts that 360 Insurance seeks the

24   inference that "[t]o the extent that Insurealife contacted Plaintiff on behalf of 360 Insurance, that

26   [5] Should it come to light that the declaration is false, of course, PolicyScout will have at its
27   disposal the full breadth of sanctions available for perjury, including under Federal Rules of Civil Procedure 11.

1   only would have been possible had PolicyScout directed Insurealife to do so." *Id.*

2        Against the backdrop of the factual contentions contained in the complaints, as well as

3   various pieces of evidence—that PolicyScout is listed alongside Insuralife in the disclosure for

4   FindDreamJobs.com for prior express written consent, Dkt. 26-3 at 3-4 ("Within the Marketing

5   Partners hyperlink found in the PEWC disclosure, a hyperlink witnessed by the Plaintiff, the

6   Defendant's name, PolicyScout. [*sic*] as well as Insuralife is found."), and PolicyScout also

7   entered into the contract with Fluent LLC, the entity that obtained Plaintiff's contact information

8   from FindDreamJobs.com—there is sufficient entanglement and corroboration that PolicyScout's

9   version of events cannot be wholly credited.[6] Although 360 Insurance's Third Party Complaint

10  could certainly have alleged more to solidify the inference that PolicyScout was involved, it does

11  just enough at this early stage for such an inference not to be sheer speculation warranting

12  dismissal, withstanding PolicyScout's claims of "it wasn't me."[7]

### ii. Second and Third *Calder* Effects: Express Aiming At & Knowledge of Likely Causing Harm In California

Even if it did make the call, PolicyScout maintains that that action would still fail to support specific personal jurisdiction in California, because such a call: (1) would have been made with Nichols' consent, and therefore not in violation of the TCPA; and (2) could not have been conduct knowingly aimed at California, given that Nichols' number began with a non-California area code (757). While the first of these arguments fails for the same reasons described above—crediting the non-moving party's version of events, as no inference can arise for the purposes of this motion that Nichols provided consent[8]—the second proves dispositive.

___

[6] 360 Insurance also makes arguments that seem to attack the claim that PolicyScout and Insuralife are distinct entities, but these arguments need not be resolved at this juncture.

[7] PolicyScout also uses these arguments as bases to argue that Nichols and 360 Insurance both lack standing, presumably under 12(b)(1), because neither have suffered an injury in fact traceable to PolicyScout. For the same reasons explained in this subsection, its argument is not persuasive at this early stage.

[8] 360 Insurance is also correct in pointing out that consent is not itself relevant to the personal jurisdiction analysis—the question centers on whether there was purposeful direction by PolicyScout, and not whether such direction was undertaken with consent.

1    Supreme Court caselaw indicates that "minimum contacts analysis looks to the defendant's

2    contacts with the forum *State* itself," *Walden v. Fiore*, 571 U.S. 277, 285 (2014); "mere injury to a

3    forum resident is not a sufficient connection to the forum." *Id.* at 290. Therefore, "[t]he proper

4    question is not where the plaintiff experienced a particular injury or effect but whether the

5    defendant's conduct connects him to the *forum* in a meaningful way." *Id.* (emphasis added).

6    In the context of TCPA actions, courts have consistently found the *Calder* test's second

7    and third prongs satisfied where defendants contact numbers contain area codes associated with

8    that state. *See Schlesinger v. Collins*, 2019 WL 4674396, at *2 (N.D. Cal. Sept. 25, 2019) (citing

9    cases). Conversely, many district courts refuse to find those same prongs satisfied where the calls

10   or texts were made to an area code outside of that state. *See, e.g.*, *Komaiko v. Baker Techs., Inc.*,

11   2020 WL 1915884, at *7 (N.D. Cal. Apr. 20, 2020) ("Plaintiffs have not met their burden to show

12   that Baker expressly aimed conduct at California through the text messages sent to non-California

13   numbers from non-California dispensaries."); *Abedi v. New Age Med. Clinic PA*, 2018 WL

14   3155618, at *5 (E.D. Cal. June 25, 2018) (noting that it was "of critical importance" that "the cell

15   phone number provided . . . was for a non–California number" and distinguishing cases finding

16   personal jurisdiction on the "key fact" that each of those "involved receiving 'calls' on a number

17   that corresponded to a location within the forum").

18   Plaintiff's phone number bears an area code of 757, which corresponds to the state of

19   Virginia, not California. This fact alone renders it difficult for Nichols and 360 Insurance to meet

20   their burden, and they do not provide arguments to persuade otherwise. Their argument that the

21   phone call was "of course, expressly aimed at a California resident" does not establish the

22   requisite relationship between PolicyScout and the forum state. Their argument that "it should

23   have been obvious that the Plaintiff would receive the call while in California," on account of one

24   of the declarations submitted by PolicyScout (indicating Hayward, CA as the location of the IP

25   address) more directly addresses the question, but still falls short of the requisite burden. The

26   location is provided by an IP address of a mobile phone, which is subject to change, and therefore

27   not necessarily indicative of geographic location—and is an IP address with which, more

28                                                            ORDER GRANTING MOTION TO DISMISS
                                                                      CASE NO. 22-cv-03899-RS

9

1  importantly, Plaintiff Nichols herself swears she has no association.[9] Nichols' and 360 Insurance's

2  remaining arguments are equally unpersuasive.[10]

3      Ultimately, Nichols and 360 Insurance invoke no caselaw to support a finding of

4  jurisdiction based on metadata where the area code is not of the jurisdiction they claim, and this

5  Court declines to so find. *Cf. Komaiko*, 2020 WL 1915884, at *7 ("Even assuming that

6  [defendant] knew its non-California dispensaries would likely send at least some messages to

7  California residents, and that not every California resident has a California number, mere

8  knowledge of the statistical probability that its activities will have some impact in California is too

9  attenuated to support the exercise of personal jurisdiction in this state."). On this basis, therefore,

10  the motion to dismiss is granted.[11] Though a cure may be difficult, Nichols and 360 Insurance are

11  given leave to amend.

12  ## B. Improper Forum and Other Arguments

13      Because personal jurisdiction furnishes a basis on which to dismiss, the opinion need not

14  reach PolicyScout's other arguments. Of note, however, is the fact that PolicyScout also raises a

15  venue concern, on the basis that its Agreement with 360 Insurance contains a forum selection

16  clause directing that suits relating to the Agreement shall be brought in the state of Utah. While the

17  opinion does not analyze this issue in light of the jurisdictional determination, Nichols and 360

18  Insurance should be prepared to address the concerns identified by PolicyScout as to venue.

19

20  [9] As certain factual conflicts have been resolved in favor of the non-moving parties, it would be
   inappropriate to credit PolicyScout's proffered version of events and materials submitted in
   support thereof in this context.

21

22  [10] The bulk of 360 Insurance's response regarding the 757 area code, confined to a footnote,
   argues that PolicyScout contradicts itself by arguing that phone numbers in its database are
   encrypted, such that the area codes are not readily visible, and that willful ignorance should not be

23  an excuse. Yet neither of these arguments is availing, as neither actually fulfills the burden of
   demonstrating that the intentional act was "targeted at a plaintiff whom the defendant *knows* to be

24  a resident" of California. *Bancroft & Masters, Inc. v. Augusta Nat'l*, Inc., 223 F.3d 1082, 1087
   (9th Cir. 2000) (emphasis added). Establishing that knowledge is a requisite for establishing

25  personal jurisdiction—and regardless of whether PolicyScout could or could not actually view the
   phone numbers, the 757 area code precludes an inference of knowing targeting of California.

26  [11] PolicyScout also attacks the other two elements of personal jurisdiction—conduct arising out of
   forum related activities and fair play and substantial justice—but these issues need not be

27  addressed, in light of the above.

28  ORDER GRANTING MOTION TO DISMISS
   CASE NO. 22-cv-03899-RS

United States District Court
Northern District of California

1        As this order grants leave to amend, PolicyScout's argument that it is entitled to fees,

2   pursuant to its Agreement with 360 Insurance, is currently premature. Nichols and 360 Insurance

3   have 30 days to file an amended complaint, and PolicyScout may renew its motion for fees upon

4   expiry of that deadline, should no such amended complaint arrive.

5

6   **IT IS SO ORDERED**.

7

8   Dated: January 11, 2023

9

10                                 RICHARD SEEBORG
                                   Chief United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                   ORDER GRANTING MOTION TO DISMISS
                                        CASE NO. 22-cv-03899-RS

United States District Court
Northern District of California

11

# EXHIBIT F

1    Rachel E. Kaufman (Cal. Bar No. 259353)
     rachel@kaufmanpa.com
2    Kaufman P.A.
     237 South Dixie Highway, 4th Floor
3    Coral Gables, FL 33133
     Telephone: (305) 469-5881
4
     *Attorney for Plaintiff and the Proposed Class*
5

6

7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

10   TERRI LEE NICHOLS, individually and on          Case No. 3:22-cv-03899-~~RS~~ AMO
     behalf of all others similarly situated,
11                                                   **STIPULATION FOR DISMISSAL &**
                Plaintiff,                           **~~[PROPOSED]~~ ORDER**
12
            v.                                       JUDGE: ~~HON. RICHARD SEEBORG~~
13                                                         HON. ARACELI MARTÍNEZ-OLGUÍN
     360 FINANCIAL GROUP LLC and
14   POLICYSCOUT, LLC,

15              Defendant.

16        Plaintiff Terri Lee Nichols and Defendant 360 Financial Group LLC hereby stipulate to the

17   dismissal of this action with prejudice as to Plaintiff's individual claims and without prejudice as to any

18   other member of the putative class's right to bring claims, with each party to bear its own attorneys' fees

19   and costs.

20                                        Respectfully submitted,

21   Dated: July 17, 2023                 By: */s/ Rachel E. Kaufman*
22                                        Rachel E. Kaufman
                                          KAUFMAN P.A.
23                                        *Attorney for Plaintiff and the Proposed Class*

24
                                          By: */s/ Seth Wiener*
25                                        Seth Wiener (California State Bar No. 203747)
26                                        LAW OFFICES OF SETH W. WIENER
                                          609 Karina Court
27                                        San Ramon, CA 94582
                                          Telephone: (925) 487-5607
28                                        Email: seth@sethwienerlaw.com

1

*Attorneys for Defendant*
*360 Financial Group LLC*

2

3

4

5        **ECF ATTESTATION**

6    I, Rachel E. Kaufman, attest that concurrence in this filing has been obtained from the signatories

7    above. *See* L.R. 5-1(h)(i)(3).

8    Dated:      July 17, 2023   By: *s/ Rachel E. Kaufman*

9                        ORDER

10   The above STIPULATION & PROPOSED ORDER is approved and this action is hereby dismissed as

11   stated above.

12

13

14   IT IS SO ORDERED.

15   Dated: July 17, 2023

16                        UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

2